## United States v. Edward Kelley – 3:22-CR-118-TAV-JEM
## Part II— Supplemental Statement of the Reasons for Detention

The Court has considered the proffers and arguments presented at the detention hearing, as well as the Pretrial Services Report ("PSR") prepared by the United States Probation Office, the Criminal Complaint [Doc. 3], and the Indictment [Doc. 17]. The United States Probation Office recommends that Defendant be detained. In consideration of releasing Defendant pending trial, the Court has weighed the factors set forth in 18 U.S.C. § 3142(g) and it finds that the proffers, documents, and arguments presented at the detention hearing establish by clear and convincing evidence that Defendant is a danger to the community and that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community, for the reasons set forth below.

As an initial matter, the Court finds that the charged offenses do not give rise to a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Defendant as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(2)–(3). Defendant is charged with conspiring to murder employees of the United States in violation of 18 U.S.C. § 1117 (Count One); soliciting another to commit a crime of violence, namely the murder of an employee of the United States, in violation of 18 U.S.C. § 373 (Count Two); and influencing a federal official by threat with intent to retaliate in violation of 18 U.S.C. § 115(a)(1)(B) (Count Three). These offenses are not among those for which the presumption applies.

Turning to the § 3142(g) factors, the Court first considers the nature and circumstances of the charged offenses, including "whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). For the purposes of § 3142(g)(1), a "crime of violence" is an offense that has as an element "the use, attempted use or threatened use of physical force against the person or property of another" or any felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 3156(a)(4)(A)–(B). Defendant is charged with conspiracy to murder FBI officers, soliciting another to commit a crime of violence, and retaliating against a federal official [Doc. 17]. Both solicitation of a crime of violence and retaliation against a federal official have as an element the attempt or threat to use physical force against another. *See* 18 U.S.C. §§ 115(a)(1)(B) (threat to "assault, kidnap or murder . . . a Federal law enforcement officer") & 373(a) (inducing another with intent that the person commit a "felony that has as an element the use, attempted use, or threatened use of physical force . . . against" another person). Additionally, the Court finds that conspiracy to murder FBI employees is a felony, the commission of which entails a "substantial risk" that physical force may be used against others. *See* 18 U.S.C. § 3156(a)(4)(B). Thus, the Court finds Defendant is charged with crimes of violence.

The Court also finds the circumstances of the charged offenses, as alleged in the Indictment and Criminal Complaint, evinced a willingness and a plan to commit acts of violence and contemplated the use of firearms. Count One alleges Defendant Kelley committed the following overt acts in furtherance of the conspiracy to murder FBI employees: discussing and collecting information and making plans to kill FBI employees, providing Codefendant Austin Carter

("Carter") with a list of FBI and video of employees to target, and asking to store firearms and ammunition at the confidential witness's residence [Doc. 17 pp. 1–2]. Defendant allegedly conspired with Carter and a coworker (the cooperating witness) to perform "assassination missions" against the federal officers who investigated and arrested him and executed search warrants for his residence and vehicle [Doc. 3 pp. 4–8]. Kelley contemplated that the assassination missions would involve firearms, telling the cooperating witness that a "magnifier" for his rifle would be useful for long distance targets [*Id.* ¶ 12(c)]. Accordingly, the Court finds the nature and circumstances of the charged offenses weigh heavily in favor of detention.

Second, the Court considers the weight of the evidence of Defendant's dangerousness. 18 U.S.C. § 3142(g)(2). In *United States v. Stone*, the Sixth Circuit clarified that the weight of the evidence against the defendant "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." 608 F.3d 939, 948 (6th Cir. 2010). Here, the evidence of Defendant's coordination of a scheme to assassinate federal officers comes from a coworker, who was also a participant in the scheme. The coworker informed law enforcement that, following a meeting among Defendant, Carter, and the coworker, Carter gave the coworker a list of targeted federal officers and a thumb drive with images of officers executing a search warrant at Kelley's house, said this list was created by Kelley, and told the coworker to memorize these items and then destroy them [Doc. 3 ¶ 12]. The coworker made surreptitious recordings of conversations with Defendant in which Defendant told the coworker that he wanted their group to go to Athens, Tennessee, to "do immediate action drills" and asked to store weapons and ammunition at the coworker's house when he went to Athens, so those items would be accessible [*Id.* ¶ 13(b)–(c)]. Defendant directed the coworker to "tak[e the FBI agents] out at their office," if he was arrested again [*Id.* ¶ 13(d)]. Defendant also directed the coworker to "recruit as many as you can" to attack the FBI office and that once sufficient cohorts were gathered, they were to make "every hit . . . hurt" [*Id.*]. At the hearing, the Government proffered that Defendant's firearms were stored with a friend who lives near Defendant and his wife. Finally, the PSR reflects that Defendant served as a squad leader in the Marine Corps, worked as a range officer at an armory, and has worked for two security companies, one overseas and one in this district. While presuming Defendant's innocence, the allegations show a willingness to take violent action against others, and it appears that Defendant has the training and potential access to the equipment (firearms) to do so. The weight of the evidence of Defendant's dangerousness is therefore great.

Third, the Court must consider a host of factors relating to Defendant's history and characteristics. 18 U.S.C. § 3142(g)(3)(A). Defendant is a 33-year-old man who has resided in this district for four years, in Washington for most of his life, and overseas during his military service. Defendant and his wife have been married for four years and have a small child and an infant. The couple has a home in Maryville, Tennessee, to which Defendant proposes returning if released. Defendant served eight years in the Marine Corps, from which he was honorably discharged. He reported having no medical problems or history of mental health treatment, but defense counsel proffered that he receives disability payments stemming from his military service.

Defendant most recently worked as a demolitionist and laborer and has held four other jobs since moving to East Tennessee in 2020. Defendant's work for a security company in Maryville was terminated following his arrest in May 2022 for charges stemming from his actions at the United States Capitol on January 6, 2021. Although Defendant Kelley has no history of criminal

convictions, he has eleven charges in his federal criminal case in the District of Columbia, including charges for assaulting an officer and engaging in physical violence in a restricted building. *See United States v. Tolbert*, Nos. 3:09-CR-56-TAV-HBG & 3:10-CR-30-TAV-HBG, 2017 WL 6003075, at *4 (E.D. Tenn. Dec. 4, 2017) (holding that "the court may consider both actual convictions and mere arrests or indictments to assess the defendant's dangerousness, though the latter will typically weigh less heavily in favor of detention"). Finally, and significantly, the Court finds that at the time of the charged offenses, Defendant was on pretrial release for his D.C. charges. Defendant's pretrial release was recently revoked. Despite the support of Defendant's immediate family, military service, and history of employment, the Court finds Defendant's history and characteristics support detention, based upon his limited ties to the community, arrest history, and alleged violation of pretrial release.

Finally, the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). The Government proffered that the cooperating witness, who provided information in this case, was Defendant's coworker. Defendant knows the coworker's identity, where the coworker lives, and the coworker's family. Defendant's alleged actions in furtherance of retaliation against federal officers reveal that the coworker could be in particular danger if Defendant were released. In addition, based upon Defendant's actions in seeking to retaliate against the federal officers who investigated and arrested him for the D.C. offenses, the Court finds that Defendant presents a particular danger to the federal officers who investigated and arrested Defendant in this case. Moreover, Defendant's disregard for the conditions of release imposed by the D.C. court suggests that he similarly would have little regard for conditions this Court would impose upon him, including that he not possess firearms.

Considering the § 3142(g) factors, the Court finds that the information provided in the PSR and at the hearing established by clear and convincing evidence that Defendant poses a danger to the community and another person, specifically the cooperating witness and federal agents. The Court has considered whether there are any conditions or combination of conditions available that would reasonably assure the safety of the community and Defendant's appearance as required, including those offered by Defendant: electronic monitoring, home detention, and elimination of any internet connection. None of these conditions or others, nor a combination of these or other conditions, will reasonably assure the safety of any other person and the community. Although Defendant proposes home detention, the Court questions whether this would assure the safety of the cooperating witness or the community as Defendant advocated recruiting others in addition to Carter and the cooperating witness to effectuate his plan to attack on the Knoxville FBI field office in the event of his arrest [Doc. 3 ¶ 13].

For all these reasons, the Court finds that the factors collectively weigh in favor of pretrial detention. Defendant shall therefore be detained. 18 U.S.C. § 3142(e)(1).