UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDWARD KELLEY | Case No. 3:22-cr-118<br><br>Judge Varlan<br>Magistrate Judge Poplin |

# **TRIAL BRIEF OF THE UNITED STATES**

The United States of America, through undersigned counsel, hereby respectfully submits its trial brief in the above-captioned case.

## I. STATUS OF THE CASE

*A. Status*

On December 21, 2022, a Grand Jury of the Eastern District of Tennessee returned an Indictment against the defendant, Edward Kelley. (Doc. 17). The defendant is charged with:

- one count of Conspiracy to Murder Employees of the United States, in violation of 18 U.S.C. §§ 1114 & 1117;

- one count of Solicitation to Commit a Crime of Violence, in violation of 18 U.S.C. § 373; and

- one count of Influencing/Retaliating Against Federal Officials by Threat, in violation of 18 U.S.C. § 115.

(*Id.*).

The defendant is in custody.

A jury trial in this matter is scheduled to begin at 9:00 a.m. on August 13, 2024. (Doc. 52).

B. *Witnesses and Trial Length*

The United States anticipates that it will call approximately six witnesses in its case-in-chief.

The United States presently intends to call the following witnesses (listed alphabetically and not necessarily in the order of appearance), respectfully noting that this list is not final and may be supplemented or amended as appropriate:

- Austin Carter;
- FBI Physical Scientist / Fingerprint Examiner Icel Kuznetsova;
- FBI Special Agent Jessi Mann;
- FBI Forensic Specialist Pasqual J. Rinaldi, Jr.;
- Christopher Roddy; and
- FBI Special Agent Richard Smith.

Additionally, the United States may call or recall additional witnesses, if appropriate, during presentation of rebuttal evidence.

The United States anticipates that the presentation of its case-in-chief will take approximately two to three days.

C. *Attorneys*

The United States is represented in this matter by Assistant United States Attorneys Casey T. Arrowood and Kyle J. Wilson.

The defendant is represented by Attorney Mark Brown.

The attorneys have conferred and remain in correspondence concerning this trial.

2

## II. CHARGES AND ELEMENTS

### A. *The Charged Conduct*

The defendant is charged with three crimes, as above. The applicable statutes provide the following:

Count I - Conspiracy to Murder Employees of the United States

*18 U.S.C. § 1117*:

If two or more persons conspire to violate section 1111, 1114, 1116, or 1119 of this title, and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life.

*18 U.S.C. § 1114(a)*:

**In General** – Whoever kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance, shall be punished—

**(1)** in the case of murder, as provided under section 1111;
**(2)** in the case of manslaughter, as provided under section 1112; or
**(3)** in the case of attempted murder or manslaughter, as provided in section 1113

Count II – Solicitation to Commit a Crime of Violence

*18 U.S.C. § 373(a)*:

Whoever, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct, shall be imprisoned not more than one-half the maximum term of imprisonment or (notwithstanding section 3571) fined not more than one-half of the maximum fine prescribed for the punishment of the crime solicited, or both; or if the crime solicited is punishable by life imprisonment or death, shall be imprisoned for not more than twenty years.

Count III – Influencing/Retaliating Against Federal Officials by Threat

*18 U.S.C. § 115(a)(1)*:

Whoever—
**(A)** assaults, kidnaps, or murders, or attempts or conspires to kidnap or murder, or threatens to assault, kidnap or murder a member of the immediate family of a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under section 1114 of this title; or
**(B)** threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section,
with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b).

B. *Elements*

In order for the United States to prove that the defendant committed the crimes with which he is charged, it must prove each of the following elements beyond a reasonable doubt.

Count I - Conspiracy to Murder Employees of the United States

1. Two or more persons conspired, or agreed, to commit the crime of murdering U.S. employees in violation of 18 U.S.C. § 1114;
2. The defendant knowingly and voluntarily joined the conspiracy; and
3. A member of the conspiracy did one overt act to effect the object of the conspiracy.

Count II – Solicitation to Commit a Crime of Violence

1. The defendant intentionally solicited, commanded, induced, or otherwise endeavored to persuade another person to engage in conduct;
2. The conduct constituted a federal felony that had as an element he used, attempted use, or threatened use of physical force against property or against a person; and
3. The circumstances must be strongly corroborative of the intent.

Count III – Influencing/Retaliating Against Federal Officials by Threat

    1.      The defendant threatened to assault, kidnap, or murder a federal law enforcement officer,
    2.      With intent to:
          a. Impede, intimidate, or interfere with law enforcement while law enforcement was engaged in the performance of official duties; or
          b. Retaliate against such law enforcement officer on account of the performance of official duties.

C. *Offense-Specific Defined Terms*

1.      Murder of officers and employees of the United States means the unlawful killing, with malice aforethought, of an officer or employee of the United States or any agency in any branch of the United States government while such officer or employee was engaged in or on account of the performance of official duties, or any person assisting such officer or employee in the performance of such duties or on account of that assistance. 18 U.S.C. §§ 1111, 1114.

2.      Employees of the Federal Bureau of Investigation are "officers and employees" of the United States. *See generally*, *United States v. Talley*, 164 F.3d 989 (6th Cir. 1999).

**III.    SUMMARY OF THE CASE**

The defendant was allegedly present and engaged in criminal conduct at the United States Capitol during the riots that occurred on January 6, 2021. (*See* D.D.C. Case no. 1:22-cr-408) ("DC Case"). As a result of that alleged conduct, the defendant was indicted by a grand jury of that court via an eleven-count indictment.[1] (DC Case, Doc. 28).

While on pretrial release for the DC Case, the defendant remained physically present in the Eastern District of Tennessee. The defendant and others, including co-defendant Austin Carter, formed a group that was preparing for armed conflict against the United States

---

[1] In the DC Case, the defendant faces charges of: Obstruction of an Official Proceeding; Assaulting, Resisting, or Impeding Certain Officers; Destruction of Government Property (x2); Entering and Remaining in a Restricted Building or Grounds; Disorderly and Disruptive Conduct in a Restricted Building or Grounds; Engaging in Physical Violence in a Restricted Building or Grounds; Entering and Remaining in the Gallery of Congress; Disorderly Conduct in a Capitol Building; Act of Physical Violence in the Capitol Grounds or Buildings; Parading, Demonstrating, or Picketing in a Capitol Building. (DC Case, Doc. 28).

5

Government and its personnel, specifically including FBI agents. The defendant proposed to conduct this attack by various means, including by firearms and explosives.

The defendant had access to weapons, including firearms and explosives. The defendant further possessed various manuals and instruction guides on how to make, in the words of the file-naming convention he employed on his computer, "Home made Explosives and other" items.

The defendant and others, including co-defendant Austin Carter, formed a plan to attack FBI agents and the FBI Field Office in Knoxville, Tennessee. The defendant developed a list – comprising names and contact information primarily of FBI personnel involved in his arrest and the search of his home in the DC Case – of individuals to be targeted for assassination. He distributed that list to Carter, and he instructed Carter to distribute a second copy of the list to Christopher Roddy, who thereafter brought it to the attention of law enforcement.

After providing the list, Kelley became concerned that he was under surveillance by the FBI and other law enforcement. He contacted both Carter and Roddy to solicit them to carry out the attack on FBI personnel, specifically ensuring the attack on the FBI Knoxville Field Office would take place in the event one of the conspirators was arrested.

The instant Indictment resulted.

## IV. EXHIBITS

The United States has provided defense counsel with a list of anticipated exhibits as well as the exhibits themselves, reserving the right to supplement as necessary. A copy of that list is attached to this memorandum.

The United States does not intend to introduce evidence pursuant to Fed. R. Evid. 404(b). However, as a prophylactic measure, on August 6, 2024, the United States notified the defendant of certain exhibits that are intrinsic to this case and not within the ambit of Rule 404, but that –

were the Court to determine that any aspect of the evidence was subject to 404(b) – would still be admissible for nearly all the non-exhaustive "permitted uses" identified in the Rule itself.

The United States has invited stipulations regarding the authenticity and/or admissibility of the exhibits identified on its working exhibit list. Counsel for the defendant and United States continue to confer on this matter.

## V. EVIDENTIARY AND OTHER TRIAL MATTERS

*Pending Motions*

There are no pending motions before the Court.

*The Defendant's Conduct on January 6, 2021*

The defendant was on pretrial release in the DC Case when he committed the instant offenses now before this Court for trial. The evidence establishes that the individuals the defendant sought to assassinate were the same individuals involved in his arrest and the search of his home attendant to the DC Case. Accordingly, to some extent at least, the DC Case is necessarily and inexplicably intertwined with the charges the defendant now faces before this Court.

However, the United States recognizes that the defendant is not on trial before this Court for his alleged conduct at the United States Capitol on January 6, 2021. The undersigned Assistant United States Attorneys conferred with defense counsel regarding the issue of proof concerning the DC Case, and the Government believes it has reached an agreement concerning the proper evidentiary parameters in this regard.

In short, it is unavoidable that certain topics will be addressed, including that the defendant is charged in the District Court of Washington, D.C., based on alleged conduct on January 6; that he was on pretrial release for those charges; and that FBI personnel and

7

supporting state and local law enforcement arrested him and searched his residence in connection with the DC Case. Nevertheless, the Government does not intend to elicit proof in its case-in-chief concerning the specific charges he faces in the DC Case or any specifics of his alleged conduct while at the Capitol on January 6, 2021. Additionally, at *voir dire*, the Government intends to question prospective jurors in an effort to ensure that, whatever their feelings may be concerning the events of January 6, 2021, they can fairly evaluate the evidence presented in this case on its own merits.

*Transcripts of Certain Recordings*

During the testimony of some witnesses, the United States intends to play audio recordings of certain calls between Christopher Roddy and Edward Kelley, as well as calls between Christopher Roddy and Austin Carter. These calls will be admitted through Christopher Roddy, the witness who recorded them.[2]

The United States proposes to use transcripts of those calls to assist the jury at trial. Copies of the transcripts have already been provided to defense counsel, and the United States has invited the defendant to identify any potential inaccuracies, about which the parties may then confer and attempt to reach agreement. At trial, hard-copy transcripts will be provided to the defendant, the Court, and each individual juror to assist them in listening to the calls.

"The decision to admit into evidence the transcript of taped recordings is within the discretion of the court . . . ." *United States v. Fults*, 639 F. App'x 366, 370-71 (6th Cir. 2016) (quoting *United States v. Gallagher*, 57 F. App'x 622, 625 (6th Cir. 2003)); *see United States v.*

---

[2] As a logistical matter, and to preview the admission procedure for these exhibits in the event a stipulation is not reached, the United States has played each individual recording for Christopher Roddy, and he has heard copies of each exhibit as marked in the attached Exhibit List (i.e., GX 5-11). The United States anticipates that he will testify that each is a true and accurate copy of a recording that he made.

8

*Segines*, 17 F.3d 847, 854-55 (6th Cir. 1994) (noting, among other things, that the use of transcripts as a listening aid is within the discretion of the trial court and that the preferred method for determining accuracy is a stipulation by all parties). To be clear, the United States does not intend for the transcripts to be admitted into evidence – only to serve as listening aids for the jury while they are in the courtroom. Further, the United States will ask for an appropriate limiting instruction (i.e., that if the jury believes the transcript differs from the audio, it is to rely on the audio and not the transcript) at the time of the transcript's production.

*Agent/Victim Testimony*

At present, the United States intends to present the testimony of FBI Special Agents Richard Smith and Jessi Mann. Special Agents Smith and Mann both participated in the arrest of the defendant and the search of his home in relation to the DC Case. They are also both named specifically on the list provided by the defendant to Carter and Roddy. In addition to testimony concerning the investigative history and procedures employed, the United States will elicit testimony concerning the effect of the defendant's threats on Special Agent Smith, Special Agent Mann, and the FBI Field Office.

As an initial matter, if Special Agents Smith and Mann recount the threats they heard in this context, it would not be hearsay. "A statement that is not offered to prove the truth of the matter asserted but to show its effect on the listener is not hearsay . . .. Such a statement may be admitted to show why the listener acted as she did." *United States v. Churn*, 800 F.3d 768, 776 (6th Cir. 2015) (internal quotations and citations omitted).

Further, the statements are otherwise evidentiarily proper. The jury will be called upon to assess whether the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence. *Counterman v. Colorado*, 600 U.S. 66, 69 (2023).

9

Additionally, it must consider whether the defendant manifested a serious expression of intent to inflict bodily harm that a reasonable person would perceive to be an authentic threat. Sixth Cir. Pattern Jury Instr. 18.01(2)(A).[3]

The reaction of the intended recipients of the defendant's threats – e.g., that a person on the list felt genuinely threatened or apprehensive or that the FBI apparatus as a whole took security measures as opposed to receiving the threat as a joke or feeling merely curious – speaks directly to each of these elemental considerations. *See, e.g., United States v. Williams*, 202 F.3d 271 (Table), 2000 WL 320006, at *3 (6th Cir. Jan. 3, 2000) ("Defendant claims the trial court abused its discretion by permitting the victims of the threats to testify that they took the threats seriously. Defendant argues that the prejudicial effect outweighed the relevancy of their testimony. See 28 U.S.C. § 403. Defendant again is wrong. Their testimony was offered to explain that a reasonable person would perceive the Defendant's words as a threat. The probative value of the testimony outweighs any prejudicial effect."); *see also, e.g.*, *United States v. Wheeler*, 776 F.3d 736, 745-46 (10th Cir. 2015) (holding that a reasonable person could interpret the defendant's statements as a serious threat, where those statements led recipients to arm themselves and their spouses, warn their pastor and children's teachers about the defendant, and contact police); *United States v. Davila*, 461 F.3d 298, 305 (2d Cir. 2006) (explaining that the fact that prosecuting office's employees, who found baby powder, initiated a full-scale

---

[3] The Sixth Circuit has explained that, though *Elonis v. United States*, 575 U.S 723 abrogated the formerly applicable "reasonable person-negligence" intent standard in threat cases, it did not disturb the proper consideration of whether a "reasonable observer would view the message as a threat." *See United States v. Howard*, 947 F.3d 936, 946 (6th Cir. 2020) (affirming a district court's instruction that: "In evaluating whether the communication contained a, quote, true threat, close quote, you should consider whether in light of the context a reasonable person would believe that the statement was a serious expression of an intention to inflict bodily injury and whether the statement was made for the purpose of furthering some goal through the use of intimidation.")

10

emergency response relevant to fact that correspondence was true threat) *Doe ex. rel. Doe v. Pulaski County Special Sch. Dist.*, 306 F.3d 616, 626 (8th Cir. 2002) (finding relevant the fact that victim cried and slept with the lights on for two nights after reading threatening letter); *Planned Parenthood of Columbia/Willamette, Inc. v. American Coal. of Life Activists*, 290 F.3d 1058, 1086 (9th Cir. 2002) (en banc) (explaining that fact that victim donned bullet-proof vest was relevant).

*Statements of a Co-Conspirator*

The United States intends to introduce certain statements in furtherance of the conspiracy – i.e., calls and messages of Austin Carter – in its case-in-chief.

A statement offered against a party that is made by a co-conspirator during the course of and in furtherance of that conspiracy is admissible as a non-hearsay statement. Fed. R. Evid. 801(d)(2)(E). Carter has pleaded guilty to being a member of the conspiracy with which the defendant is now charged. The statements the government intends to introduce were made in the course and furtherance of the conspiracy. Though some of the statements were made to Christopher Roddy – then working as a confidential source for the FBI – the statements are still properly admitted; co-conspirator statements made to undercover and cooperating personnel are still admissible per Rule 801(d)(2)(E). *See, e.g.*, *United States v. Black*, 465 F. App'x 510, 515 (6th Cir. 2012) (statements to confidential informant); *United States v. Mooneyham*, 473 F.3d 280, 286 (6th Cir. 2007) (statements to undercover agent).

*Redacted Exhibits*

The United States intends to introduce the list of agents provided by the defendant to Austin Carter, who then provided it to Christopher Roddy. That list includes the names and mobile telephone numbers of various law enforcement personnel. Additionally, it will introduce

11

an e-mail from the defendant to the United States Probation Office concerning the friend with whom the defendant secured his weapons contains that friend's name, address, and other information.

In order to ensure a full and appropriate presentation of evidence to the jury while balancing the privacy interests of all those involved, the Government proposes the following course of action.

At trial, the Government will tender the exhibits – presently labeled GX 2 and GX 25 – for admission in two forms. The first form will be complete and unaltered, and these exhibits will be designated "GX 2" and "GX 25." The Government will simultaneously tender redacted copies that are identical to the unaltered copies in all but one respect: they will have the first six digits of telephone numbers and the street addresses redacted. These exhibits will be designated "GX 2R" and "GX 25R."

Once admitted, at trial, it will present (to the Court, the witness, the jury, and the gallery) the complete and unaltered exhibits – GX 2 and GX 25. However, the United States will move the Court to maintain these exhibits under seal in the Court's public trial record, substituting them instead with the redacted exhibits GX 2R and GX 25R.

*Expert/Opinion Witnesses*

The United States has provided the defendant notice of two expert/opinion witnesses: FBI Physical Scientist / Fingerprint Examiner Icel Kuznetsova and FBI Forensic Specialist Pasqual J. Rinaldi, Jr. Broadly, the Government anticipates Physical Scientist Kuznetsova will testify concerning fingerprints on certain exhibits; it anticipates Forensic Specialist Rinaldi will testify as to certain electronic devices found in the defendant's home and the contents extracted therefrom.

The United States here highlights two matters for the Court's consideration and the defendant's. First, it will not refer to the witnesses as "expert witnesses" in front of the jury. Second – absent instruction from the Court to the contrary – it does not anticipate officially "tendering" the witnesses as opinion witnesses in front of the jury. The Government will elicit testimony establishing a baseline of the witness's experience, training, and education, then it will proceed directly to the substance of the witness's testimony without remark on the witnesses' status as an "opinion" or "expert" witness.

## VI. CONCLUSION

The United States is prepared to commence trial at 9:00 a.m. on August 13, 2024.

Respectfully submitted on August 8, 2024.

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

By: */s/ Casey T. Arrowood*
*/s/ Kyle J. Wilson*
Casey T. Arrowood
Kyle J. Wilson
Assistant United States Attorneys
TN BPR No. 038225
TN BPR No. 031844
800 Market Street, Suite 211
Knoxville, TN 37902
(865) 545-4167
Casey.Arrowood2@usdoj.gov
Kyle.Wilson@usdoj.gov

13