**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **Case No: 3:22-cr-118** |
| | ) | **JUDGE VARLAN** |
| EDWARD KELLEY, | ) | **Magistrate Judge McCook** |
| | ) | |
| Defendant. | ) | |

**MOTION BY THE DEFENDANT EDWARD KELLEY FOR JUDGMENT OF
ACQUITTAL OR A NEW TRIAL**

COMES the Defendant Edward Kelley ("Kelley"), by and through counsel and pursuant to *Fed. R. Crim. P. 29(c)* and *Fed. R. Crim. P. 33(a)* and moves this Court for entry of Judgment of Acquittal or in the alternative for a New Trial.

## **INTRODUCTION**

Kelley was indicted on three (3) counts. Count 1 charged Kelley and co-defendant Austin Carter with conspiracy to murder employees of the United Staes in violation of 18 U.S.C. §1114. This Count was supported by five overt acts. The indictment alleged the overt acts included that on or about December 3, 2022 Kelley, Carter and co-operating witness discussed collecting information and plans to kill FBI employees. On or about December 13, 2023, Carter provided the co-operating witness with a list that was provided by Kelley. On or about December 13, 2022, Carter instructed the co-operating witness to memorize the names of the FBI employees on the list and then burn it. On December 14, 2022, Kelley asked the co-operating witness if he could store firearms and ammunition at the co-operating source's residence. And finally, on December 14, 2022, Kelly and Carter discuss plans to attack the FBI filed office in Knoxville.

Count 2 charged Kelley with solicitation to commit a crime of violence in violation of 18 U.S.C. §1114 and 18 U.S.C. §373.  Finally, count 3 charged Kelley with Influencing a Federal Official by Threat in violation of 18 U.S.C. §115(a)(1)(B).

At the close of the Government's proof and at the close of all the evidence Kelley moved for a Rule 29(c) motion for Judgment of Acquittal.  Those motions were denied.

On November 20, 2024, Kelley was found guilty on all three charges.  He's pending sentencing tentatively scheduled for May 7, 2025.  He now renews his Rule 29(c) motion and additionally moves the Court for a New Trial pursuant to Fed. R. Crim. P. 33(a)

## ARGUMENT

### I.      Legal Standard

#### a.      Motion for Judgment of Acquittal

Fed. R. Crim. P. 29(c) provides –

"(c)      After Jury Verdict or Discharge.
(1)      Time for Motion.  A defendant may move for a Judgment of Acquittal, or renew such motion, within 14 days after a guilty verdict or after the court discharges the jury, which is later.
(2)      Ruling on the Motion.  If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal.  If the jury has failed to return a verdict, the court may enter judgment of acquittal.
(3)      A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge."

*Fed. R. Crim. P. 29(c) (West 2024)*.

A Rule 29(c) "motion is a challenge to the sufficiency of the evidence, raised following a jury verdict or discharge."  *United States v. Huff*, 3:10-cr-73, 2012 WL 441197 at *1 (E.D. Tenn. 2012).  "When reviewing a sufficiency of the evidence claim, a court must decide, whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*.  (citing, *United*

*States v. Gardner*, 488 F. 3d 700, 710 (6th Cir. 2007); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781. 61 L. Ed. 2d 560 (1979)). In determining the motion, "the court can neither independently weigh the evidence, nor judge the credibility of the witnesses who testified at trial." *Id*. (citing, *United States v. Welch*, 97 F. 3d 142, 148 (6th Cir. 1996)). "After a review of the evidence, a court may conclude that a conviction is supported by sufficient evidence even though the circumstantial evidence does not remove every hypothesis except that of guilt." *Id*. (citing, *United States v. Jones*, 102 F. 3d 804, 807 (6th Cir. 1991)). "In making this evaluation, the sufficiency of the evidence must be viewed in terms of the entirety of the record." *Id*. (citing, *United States v. Stone*, 748 F. 2d 361, 363 (6th Cir. 1984)).

**b.** **Motion for a New Trial**

Federal Rule of Criminal Procedure 33 provides –

"(a) Defendant's Motion. Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment."

*Fed. R. Crim. P. 33(a) (West 2024)*.

"Rule 33 of the Federal Rules of Criminal Procedure provides that, on the motion of a defendant, the court may grant a new trial if required in the interest of justice." *United States v. Huff*, 3:10-cr-73, 2012 WL 441197 at *1 (E.D. Tenn. 2012). A motion for a new trial "[m]ay be premised upon the argument that the jury's verdict is against the manifest weight of the evidence." *Id*. (citing, *United States v. Hughes*, 505 F. 3d 578, 593 (6th Cir. 2007)). The motion "should only be granted in the extraordinary circumstances where evidence preponderates against the verdict." *Id*. "In considering a Rule 33(a) challenge to a conviction based on the weight of the evidence, a court can consider the credibility of witnesses and the weight of the evidence to ensure that there

is not a miscarriage of justice. It has often been said that…[the judge] sits as a thirteenth juror."

*Id.* (citing, *United States v. Ashworth*, 836 F. 2d 260, 266 (6th Cir. 1988)).

Courts in the Sixth Circuit have noted "while Rule 29(c) and Rule 33(a) deal with similar issues, the two rules are governed by different standards of review. *Id.* "On a motion for judgment of acquittal, pursuant to Rule 29(c), a court is required to approach the evidence from a standpoint most favorable to the government, and to assume the truth of the evidence offered by the prosecutor." *Id.* "On a motion for a new trial pursuant to Rule 33(a), the power of the Court is much broader because the court may weigh the evidence and consider the credibility of witnesses." *Id.* (citing, Charles Alan Wright, Nancy King & Susan Klein*, Federal Practice and Procedure §533 (3d. ed. 2004)*.

**II.** **KELLEY IS ENTITLED TO A JUDGMENT OF ACQUITTAL OR NEW TRIAL BASED ON THE INSUFFICIENCY OF THE EVIDENCE AND ALLOWING THIS VERDICT TO STAND WOULD BE A MISCARRIAGE OF JUSTICE.**

**a.** **Count 1 – Conspiracy to Murder Employees of the United States**

The essential elements of a conspiracy charge are "that the alleged conspiracy existed, the defendant willfully became a member, and one of the conspirators knowingly committed at least one alleged overt act in furtherance of some object or purpose of the conspiracy." *United States v. Ross*, 190 F. 3d 446, 450 (6th Cir. 1999). "Proof of an agreement between two persons is an absolute prerequisite to obtaining a conspiracy conviction." *United States v. Pannell*, 737 F. 2d 521, 536 (6th Cir. 1984) (citing, *Iannelli v. United States*, 420 U.S. 770, 777, 95 S. Ct. 1284, 1289, 43 L. Ed. 2d 616 (1975)). *See also, United States v. Reifsteck*, 841 F. 2d 701, 704 (6th Cir. 1988) ("In order to prove the existence of a conspiracy in violation of section 371, the evidence must establish an agreement between two or more persons to act together in committing an offense and an overt act in furtherance of the conspiracy").

In this case, the Government's proof failed to show an agreement. There was a lot of discussion, but no plan to murder federal employees. One of the phone conversations played at trial showed an awkward discussion between Austin Carter and Christopher Roddy where each was anything but committal. One even asked the other if he was on board only to receive a response that if you are I am. That is not an agreement either express or implied.

At best the Government's proof at trial showed an association between Kelley, Carter and the cooperating witness Roddy. "Mere presence at the scene of an alleged transaction or event, mere association with persons involved in a criminal enterprise, or mere similarity of conduct amount various persons and the fact that they may have associated with each other and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy." *United States v. Davenport*, 808 F. 2d 1212, 1218 (6th Cir. 1987). "Although the connection between the defendant and the conspiracy need only be slight, an agreement must be shown beyond a reasonable doubt." *Id*. (citing, *United States v. Avery*, 128 F. 3d 966, 971 (6th Cir. 1997)).

There is no denying that Kelley, Carter and Roddy associated with each other but there was never an agreement. Without an agreement Count 1 fails as a matter of law.

In addition, the Government's proof failed on the element of an "overt act". "The Sixth Circuit has consistently held that an overt act is essential element of a conspiracy under 18 U.S.C. §371." *United States v. Lockhart*, 2012 WL 5867065 at *3 (E.D. Ky. Oct. 29, 2012).

There were five overt acts charged in the Indictment, but the Government did not prove any of those acts beyond a reasonable doubt. There was a discussion about collecting information on December 3, 2022, but no plan of action. The list is nothing more than a list and without a plan that's all it will ever be. On December 13th Carter instructed Roddy to memorize the names on the

list and then burn it also falls well short of an overt act. Kelley may have asked Roddy to store firearms and ammunition but the proof shows that he didn't have those weapons at the time. Finally, the December 14, 2022, conversation was just that and not a plan of action.

As the Government failed to prove the elements of Count 1, Kelley is entitled to a judgment of acquittal. In the alternative, this Court may assume the role of the thirteenth juror and order a new trial as the jury verdict is against the manifest weight of the evidence.

### b.      Solicitation to Commit a Crime of Violence

The Government's proof also failed to prove Kelley guilty of a Count 2 beyond a reasonable doubt. "The federal crime of solicitation to commit a crime of violence punishes whoever, with intent that another person engage in conduct constituting a felony, that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such person to engage in such conduct." *United States v. Talley*, 164 F. 3d 989, 996 (6ᵗʰ Cir. 1999).

On the intent element of this crime, "in order to establish that the defendant engaged in conduct in violation of §373, the government must prove by strongly corroborative circumstances that the defendant had the intent that another person engage in conduct constituting a crime described in title 18 and that the defendant actually commanded, induced or otherwise endeavored to persuade the other person to commit the felony." *Id*. (citing, *United States v. McNeill*, 887 F. 2d 448, 450 (3d Cir. 1989). "One factor strongly corroborative of intent is the fact that the defendant offered or promised payment or some other benefit to the person solicited if he would commit the offense." *Id*. (citing, *United States v. Gabriel*, 810 F. 2d 627, 635 (7ᵗʰ Cir. 1987)).

6

Other factors include whether the defendant threatened harm or some other detriment to the person solicited if he would not commit the offense; whether the defendant repeatedly solicited the commission of the offense, held forth at length in soliciting the commission of the offense, or made express protestations of seriousness in soliciting the commission of the offense; whether the defendant believed or was aware that the person solicited had previously committed similar offenses; and whether the defendant acquired weapons, tools, or information suited for use by the person solicited in the commission of the offense or made other apparent preparations for the commission of the offense by the person solicited. (See, Jury Charge).

In this case, there was no proof that Kelley solicited anyone to commit a crime of violence. This did not advance beyond talking. There is a phone conversation where Kelley tells Roddy that if he gets rolled up again to "start it". But that is well short of solicitation particularly when Carter and Roddy could not have attacked the FBI building alone and would have needed to recruit others and others certainly appeared to be unwilling to participate due to the lack of attendance at meetings. This once again represents the fatal flaw in the case of a lack of a plan.

In addition, there was no proof that could "strongly corroborate" Kelley's intent to solicit an act of violence. Kelley did not offer payment or any benefit; never threated Carter or Roddy; didn't repeatedly solicit them to "start it"; never expressed any seriousness about the attack; no proof of an awareness that Carter and Roddy had taken these types of actions before; and did not acquire weapons for Roddy and Carter. They had their own weapons. And again, as noted above at this time, Kelley did not have any weapons in his possession to provide.

Based on the lack of proof on this Count, Kelley respectfully requests that this Court set aside the verdict on Count 2 and either enter a Judgment of Acquittal or in assuming its role as the thirteenth juror, grant him a New Trial.

## c.      Influencing a Federal Official by Threat

Finally, Kelley also requests that the jury verdict on Count 3 – influencing a federal official by threat also be set aside.  "The government can sustain a conviction under this section where it is able to demonstrate that (1) the defendant conveyed a threat of physical harm to a federal official or his family; (2) the threat was intended as an act of retaliation against the federal official; and (3) this threat could reasonably be construed by the person in receipt of the threat to be actually carried out."  *United States v. Andrews*, 48 Fed. Appx. 151, 155 (6th Cir. 2002).  On this Count the Government's proof failed to show Kelley made an actual threat to an individual or had an understanding that his statements were of a threatening character.

First, it is clear from the trial record that no one from the FBI Knoxville field office ever received a direct threat.

Secondly and importantly the United States Supreme Court made it clear in the 2023 case of *Counterman v. Colorado*, 600 U.S. 66 (2023) that the perception of an individual of a threat is not enough to eliminate the long-standing position that free speech is protected by the United States' Constitution's First Amendment.  Instead, the Government must show that the defendant has an awareness that his statements can be understood as a threat.

"The state must prove in true-threats cases that the defendant had some understanding of his statements threatening character."  *Counterman*, 600 U.S. at 72.  "Threat threats of violence is another historically unprotected category of communications." *Id.* at 74 (citing, *Virginia v. Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003). "The true in that term distinguishes what is at issue from jests, hyperbole, or other statements that were taken in context do not convey a real possibility that violence will follow." *Id.*  "True threats are serious expressions conveying what a speaker means to commit an act of unlawful violence." *Id*.  "The existence of a threat

depends not on the mental state of the author but what the statement conveys to the person on the other end." *Id.* "When a statement is understood as a true threat, all the harms that have long made threats unprotected naturally follow." *Id.* True threats subject individuals to fear of violence and to the many kinds of disruption that fear engenders." *Id.*

Here while there was testimony that the FBI took Kelley's words seriously to the point of getting as agent Feaster described "fired up" about it, there was no proof that Kelley was aware of the threatening nature of his statements. The only statement coming close was the testimony that Kelley made a statement to the effect of "that bitch Mann" but this statement wasn't recorded and was delivered by a cooperating witness. This is a classic example of "hyperbole" which is protected speech.

A reasonable person may not like Kelley's statements but without more they are not true threats, and he has a constitutional right to free speech. As the Government failed to prove Count 3 beyond a reasonable doubt, he's entitled to a judgment of acquittal or a new trial.

<u>**CONCLUSION**</u>

For reasons stated herein, Defendant Edward Kelley respectfully requests that this Court (1) enter a Judgment of Acquittal on all counts in the indictment, or in the alternative, assume its role as a thirteenth juror and grant Kelley a new trial.

Respectfully submitted this 4th day of December 2024.

/s/ Mark E. Brown
Mark E. Brown (BPR #021851)
MENEFEE & BROWN, P.C.
2633 Kingston Pike, Ste. 100
Knoxville, Tennessee 37919
Phone: (865) 357-9800
Fax: (865) 357-9810
email: mbrown@menefeebrown.com

*Attorney for the Defendant Edward Kelley*

9

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December 2024 a true and exact copy of this document has been served via this Court's electronic filing system. Service is made on all parties appearing on this Court's electronic service certificate. All parties in interest may access this pleading via ECF.

/s/ Mark E. Brown
Mark E. Brown