IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No: 3:22-cr-118 |
| | ) JUDGE VARLAN |
| EDWARD KELLEY, | ) Magistrate Judge McCook |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANT EDWARD KELLEY TO VACATE CONVICTION AND DISMISS INDICTMENT WITH PREJUDICE**

COMES the Defendant Edward Kelley ("Kelley"), by and through counsel, and submits Memorandum of Law in support of his Motion to Vacate Conviction and Dismiss Indictment with Prejudice. For reasons set forth herein, this case is covered by the Presidential Pardon and Executive Order by President Donald J. Trump on January 20, 2025. Kelley must therefore have his conviction set aside, the Indictment dismissed with prejudice, and be immediately released from custody.

## WASHINGTON, D.C. PROSECUTION

This case is the second case against Kelley which directly relates to the events at the United States Capitol on January 6, 2021. On December 16, 2022, Kelley was indicted in the United States District Court for the District of Columbia on eleven (11) counts: Count 1 – Obstruction of an Official Proceeding and Aiding and Abetting the same (18 U.S.C. §1512(c)(2) and 2); Count 2 – Assaulting, Resisting and Impeding Certain Officers (18 U.S.C. §111(a)(1)); Count 3 – Destruction of Government Property (18 U.S.C. §1361); Count 4 – Destruction of Government Property (18 U.S.C. §1361); Count 5 – Entering and Remaining in a Restricted Building and

Grounds (18 U.S.C. §1752(a)(1)); Count 6 – Disorderly and Disruptive Conduct in a Restricted Building or Grounds (18 U.S.C. §1752(a)(2)); Count 7 – Engaging in Physical Violence in a Restricted Building or Grounds (18 U.S.C. §1752(a)(4); Count 8 – Entering and Remaining in the Gallery of Congress (40 U.S.C. §5104(e)(2)(B); Count 9 – Disorderly Conduct in a Capitol Building (40 U.S.C. §5104(e)(2)(D); Count 10 – Acts of Physical Violence in the Capitol Grounds or Buildings (40 U.S.C. §5104(e)(2)(F); and Count 11 – Parading, Demonstrating, or Picketing in a Capitol Building (40 U.S.C. §5104(e)(2)(G).

As part of his Washington, D.C. case Kelley was provided discovery by his initial retained counsel. However, in violation of a protective order entered in the case, the United States Attorney's Office in D.C. failed to redact important information including the names of the government agents who had or were investigating his conduct on January 6, 2021. Those names included FBI Field Office Agent Jessi Mann. The unredacted documents were provided to Kelley.

The Washington, D.C. Indictment was eventually superseded after the United States Supreme Court's decision in *Fischer v. United States*, 603 U.S. 408, 144 S. Ct. 2176, 219 L. Ed. 2d 911 (June 28, 2024)[1]. The Superseding Indictment renumbered all counts, added a new Count 1 – Civil Disorder (18 U.S.C. §231(a)(3)); and changed Count 2 – Obstruction of an Official Proceeding and Aiding and Abetting the same to a charge under 18 U.S.C. §1512(c) and 2. All of the other charges remained the same.

Kelley proceeded to a bench trial on October 28 and 29th, 2024. The Government presented 7 witnesses, including Agent Mann. On November 7, 2024, the District Judge entered Findings of

---

[1] In *Fischer* the Supreme Court held that to prove a violation of 18 U.S.C. §1512(c)(2), the Government had to establish the Defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects or other things used in an official proceeding, or attempted to do so. Prior to *Fischer*, the Government had obtained convictions under this law by arguing that January 6th rioters only disrupted an official proceeding without specifically tying the crime to documents records or objects.

Fact and Conclusions of Law finding Kelley guilty of Counts One, Three, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven and Twelve, but not guilty of the most serious charge, Count 2 representing the charge based on 18 U.S.C. §1512(c).

### INDICTMENT IN THE EASTERN DISTRICT OF TENNESSEE

While the Washington, D.C. case was pending, Kelley was indicted in this Court on December 21, 2022, on three (3) counts. Count 1 charged Kelley and co-defendant Austin Carter with conspiracy to murder employees of the United States in violation of 18 U.S.C. §1117. The Indictment alleged several overt acts in furtherance of the conspiracy including "on or about December 13, 2022, Carter provided the CW (cooperating witness) with a list of FBI employees that Carter received from Kelley."

Count 2 charged Kelley with solicitation to commit a crime of violence in violation of 18 U.S.C. §373. And Count 3 charged Kelley with Influencing a Federal Official by Threat in violation of 18 U.S.C. §115(a)(1)(B). Kelley proceeded to a jury trial on November 18 – 20, 2024. On November 20th, he was found guilty on all three counts. His sentencing hearing is scheduled for May 7, 2025.

### KELLEY RECEIVES PRESIDENTIAL PARDON

On January 20, 2025, Donald J. Trump was sworn into office as the 47th President of the United States. President Trump issued a flurry of first day executive actions including a pardon to all January 6th defendants who had been convicted and ordering their immediate release. In addition, the executive order directed the Department of Justice to dismiss with prejudice all pending January 6th related cases:

> "BY THE PRESIDENT OF THE UNITED STATES OF AMERICA
>
> A PROCLAMATION

> This proclamation ends a grave national injustice that has been perpetrated upon the American people over the last four years and begins a process of national reconciliation.
>
> Acting pursuant to the grant of authority in Article II, Section 2, of the Constitutiona of the United States, I do hereby:
>
> (b) grant a full, complete and unconditional pardon to all other individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021.
>
> The Attorney General shall administer and effectuate the immediate issuance of certificates of pardon to all individuals described in section (b) above, and shall ensure that all individuals convicted of offenses related to events at or near the United States Capitol on January 6, 2021, who are currently held in prison are released immediately. The Bureau of Prisons shall immediately implement all instructions from the Department of Justice regarding this directive.
>
> I further direct the Attorney General to pursue dismissal, with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021. The Bureau of Prisons shall immediately implement all instructions from the Department of Justice regarding this directive."

*Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at or Near the United States Capitol on January 6, 2021, signed by President Donald J. Trump on January 20, 2025.*

As directed by the President, on January 21, 2025, the United States Attorney's Office for the District of Columbia filed a "Consent Motion to Dismiss" the Indictment against Kelley. The following day, the District Court entered a Memorandum Opinion and Order dismissing Kelley's case and vacating his April 7th sentencing hearing.

## **PRESIDENTIAL PARDON POWER**

The United States Constitution grants the President the power to "grant Reprieves and Pardons" *See, U.S. Const. Art. II, Section 2.* "The Constitution empowers the President to grant Reprieves and Pardons for offenses against the United States, except in cases of impeachment." *Lorrance v. Commandant*, 137 F. 4th 1150, 1154 (10th Cir. 2021) (citing, U.S. Const., art II, §2, cl. 1). "This plenary power allows the President to reprieve or pardon all offenses after their

commission either before trial, during trial, or after trial, by individuals, or by classes, conditionally or absolutely, and this without modification or regulation by Congress." *Id*. (citing, *Ex Parte Grossman*, 267 U.S. 87, 120, 45 S. Ct. 332, 69 L. Ed. 2d 527 (1925)).

"A pardon is the act…of officially nullifying punishment or other legal consequences of a crime." *Id*. (citing, Pardon, Black's Law Dictionary 11th ed. 2019). "Thus, a President may legally absolve a person of a crime that he or she committed, regardless of whether that person has been convicted." *Id*. (citing, Pardon Clause, Black's Law Dictionary). "This comports with the modern common meaning of pardon." *Id*. (citing, Pardon, Webster's Third New International Dictionary (1986) ("To absolve from the consequences of a fault or the punishment of crime [or] to remit the penalty of (an offense)".

**KELLEY'S PENDING CASE IN THE EASTERN DISTRICT OF TENNESSEE MUST BE DISMISSED AS IT IS COVERED BY THE PRESIDENT'S EXECUTIVE ACTION**

The Presidential Pardon and executive action specifically cover all charges "related to" the events of January 6, 2021. In this instance there can be no dispute that Kelley's case in this court is related to the events of January 6th and is covered by the President's executive action.

Outside of the bankruptcy context where courts have discussed "related to" jurisdiction, counsel has been unable to find any authority on point. However, "related to" must be read in its commonsense form. Merriam-Webster Dictionary (www.merriam-webster.com/dictionary) defines "related" as to connect something with something else. Here the two cases are inextricably connected.

Both cases were led by Agent Mann. The Washington, D.C. case began with Agent Mann interviewing a gentleman from Maryville, Tennessee named Stanley Minner. Minner told Mann that he drove a person he knew only as "Ed" to Washington, D.C. on January 5, 2021, and returned on January 7, 2021. Agent Mann subpoenaed information on the hotel Minner and "Ed" stayed

during the trip, which led her to the name Edward Kelley. Mann testified in the Washington, D.C. trial:

> Q: And what did you do after receiving that information?
> A: After that, myself and another partner went to interview Mr. Kelley at his residence.
> Q: When was that?
> A: June 24, 2021.
> Q: Tell us about that interview.
> A: That interview was on Mr. Kelley's porch at his residence. It was pretty short. Mr. Kelley confirmed that he rode with Mr. Minner to Washington, D.C. on January 5th, and then returned to Tennessee on the 7th, that he had been connected with Mr. Minner through a pastor and then went to the rally for former President Trump and then walked to the Capitol, but stayed outside the building.
> Q: And at the time you interviewed Mr. Kelley, did you have any reason to doubt the veracity of his denial that he went inside the building?
> A: No. I had no factual reason to think that.
>
> ***
>
> Q: What happened after that first interview?
> A: We ended the interview. Mr. Kelley asked if he could continue it by phone another day, and so the next day I called Mr. Kelley for another interview.
> Q: And what was said during that second interview?
> A: In the second interview, Mr. Kelley restated most of what he had said the day before, that he had ridden with Mr. Minner, that he started at the rally for former President Trump, and then Mr. Trump asked the crowd to go to the Capitol building. And again, he said that he went to the Capital building but stayed outside, that he was close to the Capitol building to see flash bangs and tear gas affecting people. He also, in both interviews gave a description of what he was wearing at the Capitol.
>
> ***
>
> Q: And what was the status of your investigation after that second phone interview?
> A: After the phone interview, again, I had no factual reason to keep the matter open, and so we considered it closed. In these instances, we always say that the investigation could be reopened if further information is provided.
> Q: And why didn't you have any information to keep it open? What was it about Mr. Kelley's activity on the 6th that made it not an open investigation?
> A: According to what he told us, if he went to the rally and stayed outside and did not have forcible interactions with law enforcement, there is nothing to investigate about that.

The status of Agent Mann's investigation changed later in 2021:

> A: In December of 2021, we received further information about Mr. Kelley's activities at the Capitol.

> Q: What information did you receive?
> A: We received open-source information that included images, links to video, a link to an article showing Mr. Kelley at the Capitol, both outside and inside the building.
> Q: And after receiving those photos and video, what did you do?
> A: I reviewed all of them. Shortly after getting the information, I found the video showing the altercation under the scaffolding on the stairs with the U.S. Capitol Police Officer, and after watching that video, I opened a full investigation.
>
> ***
>
> Q: At some point did you seek an arrest and search warrant for Mr. Kelley based on his conduct on January 6th?
> A: Yes, I did.
> Q: And when were those executed?
> A: May 5, 2022.
> Q: Were you with the team that executed those warrants?
> A: I was on the team that conduct (sic in original) arrest and search of Mr. Kelley's vehicle, but I was not present at the search of Mr. Kelley's residence.

The incidents giving rise to this case occurred while Kelley was on pre-trial release in the D.C. case. While he was on release, a snitch named Christopher Roddy contacted officers about a list he had received that originated with Kelley targeting the FBI and various other law enforcement agencies. The only reason Kelley was able to draft a list was due to a mistake in the U.S. Attorney's Office in Washington, D.C. and his first attorney in the D.C. case providing him discovery. But for the Washington D.C. indictment, this case would have never been investigated, charged and prosecuted. The cases are clearly related to one another.

The scope of Mr. Kelley's pardon and the executive order to the Department of Justice to dismiss all pending Indictments against January 6th defendants with prejudice render this case no longer "federally cognizable" and ripe for dismissal on grounds of a lack of jurisdiction, an issue this court may address at any stage of the proceedings.

"Federal Rule of Criminal Procedure 12(b) provides that a motion that the court lacks jurisdiction may be made at any time while the case is pending." *United States v. Coffman*, 2024 U.S. Dist. LEXIS 165203 at *2 (E.D. Ky. Sept. 13, 2024). "If an indictment does not charge a

cognizable federal offense, then a federal court lacks jurisdiction to try a defendant for a violation of the offense." *United States v. Adesida*, 129 F. 3d 846, 850 (6th Cir. 1997). "Lack of subject matter jurisdiction may be raised at any time during a court of a proceeding and is never waived." *Id*. "Matters of jurisdiction may be raised at any time, because if a court lacks subject matter jurisdiction, it does not have power to hear the case." *Id*.

It is clear from the President's executive action that he intended his executive order to sweep broadly. If he had wanted it to apply to just the actions of January 6th he would have said so. Rather he styled his executive action as "related to" events that occurred at or near the Capitol on January 6, 2021. Thus, Kelley is entitled to the immediate dismissal of the indictment in this Court and immediate release from custody.

## CONCLUSION

For reasons set forth herein, Defendant Edward Kelley respectfully requests this Court dismiss the Indictment against him, vacate his sentencing hearing scheduled for May 8, 2025 and order him immediately released from custody.

Respectfully submitted this 27th day of January 2025

/s/ Mark E. Brown
Mark E. Brown (BPR #021851)
MENEFEE & BROWN, P.C.
2633 Kingston Pike, Ste. 100
Knoxville, Tennessee 37919
Phone: (865) 357-9800
Fax: (865) 357-9810
e-mail: mbrown@menefeebrown.com

*Attorney for the Defendant Edward Kelley*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of January 2025, a true and exact copy of this document has been served via this Court's electronic filing system. Service is made on all parties appearing on this Court's electronic service certificate. All parties in interest may access this pleading via ECF.

/s/ Mark E. Brown
Mark E. Brown