IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) |
|---|---|
| | ) |
| v. | ) Case No: 3:22-cr-118 |
| | ) JUDGE VARLAN |
| EDWARD KELLEY, | ) Magistrate Judge McCook |
| | ) |
| Defendant. | ) |

**REPLY OF THE DEFENDANT EDWARD KELLEY TO THE RESPONSE OF THE UNITED STATES TO KELLEY'S MOTION TO VACATE JURY CONVICTION AND DISMISS INDICTMENT WITH PREJUDICE**

COMES the Defendant Edward Kelley ("Kelley"), by and through counsel and replies to the Government's response in opposition to Kelley's motion to vacate his conviction and dismiss the indictment. (Doc No. 95, filed February 18, 2025).

The United States response asserts three arguments: (1) Kelley doesn't cite any authority supporting his position; (2) Federal Rule of Criminal Procedure 48(a) gives the United States the authority to determine if, when and what charges should be dismissed; and (3) the prosecutors in this case have consulted with the United States Department of Justice, who has apparently given them blessing to oppose Kelley's Motion and proceed to sentencing.

In the response, the Government argues:

"In his motion to dismiss his indictment and vacate his jury convictions in this case, the defendant contends that his 2022 conduct in East Tennessee is related to events that occurred at or near the United States Capitol on January 6, 2021, and therefore are covered by the Proclamation. The Defendant is wrong."

*Government Response, p. 2.*

A close look at the record in this case, and how it began, reveals only one conclusion: The United States is wrong. The case here in the Eastern District of Tennessee is clearly "related to"

to the events of January 6, 2021, as it only began because of Kelley's indictment in the United States District Court for the District of Columbia. This case is about a "list" (commonly and wrongly referred to as "kill list") that was created by Kelley ONLY because the United States Attorneys Office in Washington, D.C. failed to redact investigator and other names from the discovery provided to Kelley's initially retained Washington, D.C. lawyer. That conduct by the D.C. U.S. Attorney was a clear violation of a protective order designed to protect those names and was the fuse that lit this case in this district. The cases are so clearly "intertwined" that the United States assertion that it occurred as the result of "independent conduct" more than 500 miles away is simply incorrect.

The United States response is correct that at trial both parties made it clear to the Court and the Jury that this case was not about January 6, 2021. Importantly that was done before Kelley even knew he was going to receive presidential pardon for the Washington, D.C. case. Likewise, it was done to ensure that Kelley's right to a fair trial was preserved in this court and that the jury's decision was made on the evidence presented in this case. The Washington, D.C. case was separately tried before this case, and did not need to be retried a second time.

Had President Trump desired his January 20, 2025, proclamation to be limited in scope, he could have said so and made the specific actions of January 6, 2021 its focus. Instead, the language was broad using the phrase "related to". We must assume – based on the unambiguous language of his proclamation - he meant for the pardon to sweep broadly and capture all conduct that related to January 6, 2021. There can be no dispute that this case is clearly related.

While taking issue with Kelley not citing any authority, the only authority cited in the United States response is reliance on Federal Rule of Criminal Procedure 48(a). But that reliance is misplaced. Rule 48(a) casts wide discretion on prosecutors in charging decisions, but the Federal

Rule of Criminal Procedure cannot supersede Presidential Pardon power which is absolute in the United States Constitution.

Article II, Section 2 of the United States Constitution provides that "[t]he President…shall have Power to grant Reprieves and Pardons for Offenses against the United States, except in cases of Impeachment." *U.S. Const. Art. II, §2, cl 1*. The United States Supreme Court long ago laid the foundation for the President's pardon power. See, *Marbury v. Madison*, 5 U.S. 137, 165 – 66 (1803) (finding the Constitution vests the President with certain important political powers, in which in exercising those powers uses his own discretion, and is accountable only to his country, his political character, and his own conscious). The Supreme Court has further made it clear that the President has a "general, unqualified grant of power to pardon offenses against the United States." *The Laura*, 114 U.S. 411, 413 (1885); See also, *United States v. Kline*, 80 U.S. 128, 147 (1871) (President's pardon power is granted without limit); and *Ex Parte Grossman*, 267 U.S. 87, 120 (1925) (holding the "executive can reprieve or pardon all offenses after their commission, either before trial, during trial or after trial, by individuals, or by classes, conditionally or absolutely, and this without modification or regulation by Congress").

Finally, the United States Attorney's Office prosecuting this case vaguely indicates in its response that they have consulted with the Department of Justice about this case continuing, but do not indicate exactly who at the Department of Justice was consulted and if the new Attorney General of the United States – Pam Bondi – has signed off on continuing this case. This Court should require the U.S. Attorney to cite specifically who has blessed this prosecution continuing thus ignoring the Presidential pardon.

Reasonable minds are free to disagree about the scope of the President's pardon power and whether it should have been exercised in the fashion done so by President Trump on January 20,

3

2025. That was the President's choice. But what cannot be a subject for disagreement is that the language of the President's proclamation is broad enough to cover Kelley's actions in this district.

In their response, the United States argues that "other courts have reached the same conclusion for conduct separate in time or place from the events at or near the United States Capitol on January 6, 2021 (Response, p. 3). They cite two cases, *United States v. Taranto* and *United States v. Wilson*. Neither of those cases controls this case.

In *Taranto*, the Government moved to dismiss counts 7, 8, 9, 10 and 11 of the Indictment against the Defendant, but continued to pursue Counts 1 – 6. The defendant moved to dismiss all counts claiming charges he received for conduct on June 28 and 29, 2023 were related. The D.C. District Court refused to dismiss the other charges, but the reasoning behind the decision is unclear as the Court's minute order didn't elaborate on the reasons.

In *Wilson*, the D.C. District Court ordered the defendant to return to the Bureau of Prisons to continue serving a five-year concurrent sentence for firearms violations in the Western District of Kentucky. The Court found the Kentucky charges were not related to the defendant's January 6, 2021, offenses and thus not covered by the Presidential pardon.

Unlike those cases however, there is a clear connection to January 6, 2021, and Kelley's conduct in this case. This case grows out of the January 6th case and falls under the broad language of "related to."

In addition, the Government has – in other cases – interpreted the Presidential proclamation to apply to conduct that took place on dates and other than January 6, 2021, and for conduct distinct from the January 6th charges. See, *United States v. Miller*, 21-cr-119 (CJN) (D.C. District Court dismissed all counts including threatening to murder a member of Congress, made hours after defendant had left the Capitol); *United States v. Pollock and Hutchinson,* 21-cr-447 (CJN) (D.C.

4

District Court dismissed charges for failure to appear for conduct that took place in March and August 2023); and *United States v. Vo*, 25-cr-10 (TSC) (D.C. District Court dismissed separate charges for failure to report to the Bureau of Prisons against the defendant after sentencing).

For all the reasons set forth in his motion, this reply and the record as a whole, the Defendant Edward Kelley respectfully requests this Court vacate his conviction, dismiss the Indictment and grant immediate release from custody.

Respectfully submitted this 25th day of February 2025.

/s /Mark E. Brown
Mark E. Brown (BPR #021851)
MENEFEE & BROWN, P.C.
2633 Kingston Pike, Ste. 100
Knoxville, Tennessee 37919
Phone: (865) 357-9800
Fax: (865) 357-9810
e-mail: mbrown@menefeebrown.com

*Attorney for the Defendant Edward Kelley*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of February 2025 a true and exact copy of this document has been served via this Court's electronic filing system with service on those appearing on the electronic service certificate. All parties in interest may access this pleading via ECF.

/s/ Mark E. Brown
Mark E. Brown