UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) No.: 3:22-CR-118-TAV-JEM-1 |
| EDWARD KELLEY, | ) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on defendant's renewed motion for a judgment of acquittal and motion for a new trial [Doc. 90], which the government opposes [Doc. 91]. The government filed a supplemental response[1] of the type contemplated by E.D. Tenn. L.R. 7.1(d) [Sealed Doc. 99] and defendant did not reply within the time provided. *See* E.D. Tenn. L.R. 7.1(d). Accordingly, this matter is ripe for resolution. *See id*. 7.1(a), (d). After considering the record and controlling law, for the reasons that follow, the Court will **DENY** defendant's motion [Doc. 90].

## I. Background

On December 21, 2022, a federal grand jury returned a multi-count, multi-defendant indictment, charging defendant with conspiracy to murder employees of the United States, in violation of 18 U.S.C. § 1114 (Count 1), solicitation to commit a crime of violence, in

---

[1] The Court acknowledges this filing but does not address its substance in this Memorandum Opinion and Order. In his original motion [Doc. 90] and subsequent briefing, defendant nowhere raises arguments premised upon the content contained in the government's most recent filing [Sealed Doc. 99].

violation of 18 U.S.C. §§ 1114, 373 (Count 2), and influencing a federal official by threat, in violation of 18 U.S.C. § 115(a)(1)(B) (Count 3) [Doc. 17].

The case proceeded to trial on November 18, 2024 [Doc. 81]. At the close of the government's case-in-chief, defendant made an oral motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure [Doc. 82]. Of relevance, defendant argued that there was insufficient evidence to support a conviction under Counts 1, 2, and 3. Specifically, he argued that the government failed to proffer sufficient proof that he agreed to join a conspiracy, that he ever formed a clear and definite plan of attack, or that the so-called "kill list" discussed at trial (Government's Exhibit 2) amounted to a direct threat against Federal Bureau of Investigation ("FBI") personnel.

In response, the government argued that it had proffered ample evidence from which a jury could find that the defendant committed each element of the alleged crimes. It first pointed to recorded phone calls between defendant and Austin Carter in which defendant affirmed his commitment to their plan. These calls, as well as the trial testimony of Carter and Christopher Roddy, could also support the solicitation count in the government's view. Next, the government pointed to evidence of several different overt acts, including defendant's strategy-oriented discussions with Carter and Roddy, the creation of the list, and the delivery of the list, any one of which would individually suffice to support a finding that the defendant acted in furtherance of the conspiracy. Finally, the government argued that a jury may reasonably infer that defendant's possession of firearms, ammunition, and explosives corroborates his intent.

2

The Court denied defendant's motion [Doc. 84]. After a three-day trial, a jury convicted defendant on all counts [Doc. 85]. Defendant now renews his motion for a judgment of acquittal and moves, in the alternative, for a new trial [Doc. 90].

## II. Legal Standards

A motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure challenges the sufficiency of the evidence to support the conviction. *See* Fed. R. Crim. P. 29(c); *United States v. Montgomery*, 358 F. App'x 622, 628 (6th Cir. 2009). When reviewing such a motion, the Court must decide "whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007). In doing so, the Court must not weigh evidence, assess witness credibility, or "substitute its judgment for that of the jury." *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002). This standard places a "very heavy burden" on defendants challenging the sufficiency of the evidence. *Id.*

Alternatively, the Court "may vacate any judgment and grant a new trial" under Rule 33 "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The paradigmatic use of a Rule 33 motion is to seek a new trial on the ground that the jury's verdict was against the manifest weight of the evidence." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (internal quotation marks and alterations omitted). But such motions should be granted "[o]nly in extraordinary circumstances . . . when the verdict exceeds the bounds of reasonableness." *United States v. Burks*, 974 F.3d 622, 625 (6th Cir. 2020)

3

(citation omitted). "On the one hand, [the Court] must scrutinize the record and ensure that a 'miscarriage of justice' did not occur. On the other hand, the court must respect the role of the jury and ensure that evidence-supported convictions are upheld." *Id*. In contrast to a Rule 29 motion, a district judge considering a Rule 33 motion on the weight of the evidence "can act in the role of a 'thirteenth juror' and consider the credibility of the witnesses and the weight of the evidence to [e]nsure that there is not a miscarriage of justice." *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998). However, "the verdict is not unreasonable simply because different inferences could have been drawn or because other results are more reasonable." *Burks*, 974 F.3d at 625 (internal quotation marks and alterations omitted).

**III.  Analysis**

  **A.  Conspiracy to Murder Employees of the United States**

Defendant argues that the government's proof failed to show an agreement, a required element of a conspiracy charge [Doc. 90, p. 5]. In support, he cites phone conversations between him, Carter, and Roddy, which he argues were "never an agreement" [*Id*.]. Additionally, he challenges the sufficiency of the evidence that he took an "overt act" because the government's cited proof of a list of names, memorization of certain names contained in the list, and storing firearms and ammunition was not a sufficiently concrete plan of attack [*Id*. at 5–6].

The government responds that the record is replete with evidence to sustain Count 1 [Doc. 91, p. 4]. Specifically, it argues that defendant coordinated and agreed to a

4

common plan through his encrypted messaging with Carter and Roddy [*Id.*]. Further, evidence at trial demonstrated that defendant identified rally points, conducted training, close-quarter combat drills, immediate action exercises, and other preparatory activities [*Id.*]. The government also cites the testimony of Carter and Roddy who confirmed the nature and scope of the conspiracy [*Id.* at 5]. It also cites evidence demonstrating several overt acts, including meeting with his coconspirators at Jarvis Park, delivering the kill list, requesting storage of firearms and ammunition, and discussing plans to attack the FBI Field Office in Knoxville [*Id.* at 6].

To sustain a conviction under 18 U.S.C. § 1114, the government must prove that: (i) two or more persons conspired, or agreed, to commit the crime of murder of officers or employees of the United States; (ii) the defendant knowingly and voluntarily joined the conspiracy; and (iii) a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.

Here, the Court finds sufficient evidence to support the jury's verdict on the conspiracy charge in Count 1. The government introduced encrypted phone messages and recorded phone calls among defendant, Carter, and Roddy, in which defendant and his coconspirators discussed close-quarters combat training, "bug out" gear, the State Department's pistol qualification standards, and a variety of other topics related to a violent confrontation. Defendant created the encrypted chat on Signal, entitled "Be Prepared," and frequently called Carter and Roddy to inquire about their preparedness or, for example, their plans to attend training at Jarvis Park. Carter and Roddy's testimony at trial confirmed

5

that defendant developed this scheme in part due to his distrust of the government and his desire to participate in a new civil war.  Further, their testimony recounted defendant's creation and distribution of the kill list (which was linked to defendant by forensic examination), his instructions to "start it," and his plan to store firearms and ammunition at Roddy's house so that the firearms would be within "arm's reach."

Based on this evidence, the Court finds that a reasonable jury could find that defendant joined, and indeed led, the conspiracy in this case.  The evidence establishes that defendant initiated and maintained communications with Carter and Roddy for the purpose of preparing for a violent attack.  Of particular relevance, the evidence shows that towards the end of this conspiracy, defendant specifically instructed Carter and Roddy to carry out their planned attack, including by creating and distributing a list of names of targeted federal officials.  The Court finds that this evidence is sufficient to establish that defendant participated in the charged conspiracy.  Ultimately, contrary to defendant's arguments, the evidence at trial amply supported a finding that his relationship with Carter and Roddy went well beyond mere "association," and that his creation of a kill list and his planned storage of firearms and ammunition constituted overt acts in furtherance of the conspiracy.

Thus, the Court finds that, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found all of the elements of the conspiracy charged in Count 1 beyond a reasonable doubt.  Moreover, even considering the weight and credibility of the evidence, the Court does not find that the verdict on Count 1 exceeds

6

Case 3:22-cr-00118-TAV-JEM   Document 101   Filed 03/10/25   Page 6 of 12
PageID #: 900

the bounds of reasonableness or results in a miscarriage of justice. Defendant's request for a judgment of acquittal, or, alternatively, a new trial on this ground is therefore **DENIED**.

### B. Solicitation to Commit a Crime of Violence

Defendant argues that the government's proof failed to demonstrate beyond a reasonable doubt his guilt as to Count 2 [Doc. 90, p. 6]. He contends that his phone call to Roddy telling him to "start it" falls well short of solicitation, especially given the logistical challenges of attacking the FBI building without more support [*Id*. at 7]. Additionally, he did not offer payment or any benefit to Carter or Roddy, nor did he provide them with weapons [*Id*.].

The government responds by citing numerous pieces of evidence of trial that it argues justify the jury's verdict as to Count 2 [Doc. 91, p. 7]. First, it notes that defendant does not appear to challenge the government's proof of the second element of this offense; that is, that the conduct constituted a federal felony [*Id*.]. Next, the government points to phone calls introduced at trial that show defendant inducing Carter and Roddy to participate in his plan to murder federal officials [*Id*. at 8]. In particular, it points to the Government's Exhibit 9, a phone call in which defendant solicited and induced others to commit acts of violence [*Id*. at 8–9]. Finally, the government notes that trial evidence taken as a whole, points to defendant's repeated attempts over weeks and months to solicit others to commit violent acts [*Id*. at 9].

To sustain a conviction under 18 U.S.C. § 373, the government must prove that: (i) the defendant intentionally solicited, commanded, induced, or otherwise tried to persuade

another person to engage in conduct; (ii) that conduct constituted a federal felony that had as an element the use, attempted use, or threatened use of physical force; and (iii) the defendant's intent that another person engage in such conduct must be strongly corroborated by the circumstances. The indictment alleges that the conduct underlying defendant's solicitation was the murder of an employee of the United States in violation of 18 U.S.C. § 1114 [Doc. 17, p. 2].

Here, the Court finds sufficient evidence to support the jury's verdict on the conspiracy charge in Count 2. The government introduced encrypted messaging chats, recorded phone conversations, and direct testimony from Carter and Roddy, all of which affirmed that defendant organized and directed the group's plan to retaliate against federal officials. Additionally, the government introduced substantial evidence regarding the private nature of these communications and defendant's conduct during the relevant period, all of which was strongly corroborative of such an intent to solicit or otherwise try to persuade Carter and Roddy to join his scheme. For example, unrebutted trial testimony from multiple FBI personnel described defendant's acquisition and storage of significant quantities of firearms, ammunition, explosives, and guides for creating homemade bombs during the same period in which he was communicating with Carter and Roddy. Finally, as the government points out, defendant does not appear to dispute that the conduct alleged constitutes a "federal felony that had as an element the use, attempted use, or threatened use of physical force."

Based on this evidence, the Court finds that a reasonable jury could find that defendant intentionally solicited others to engage in a violent federal felony, which was corroborated by the circumstances. As discussed *supra* Section III(A), the evidence establishes that defendant initiated and maintained communications with Carter and Roddy for the purpose of preparing for a violent attack. Of particular relevance here, the Government's Exhibit 9 includes multiple direct instructions to Carter and Roddy. At trial, Roddy testified that defendant's phrase "racked, locked up, and loaded" meant that he should be prepared in case he was needed to attack the FBI Field Office. The Court finds that this evidence is sufficient to establish that defendant solicited others to carry out a federal felony.

Thus, the Court finds that, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found all of the elements of the solicitation charged in Count 2 beyond a reasonable doubt. Moreover, even considering the weight and credibility of the evidence, the Court does not find that the verdict on Count 2 exceeds the bounds of reasonableness or results in a miscarriage of justice. Defendant's request for a judgment of acquittal, or, alternatively, a new trial on this ground is therefore **DENIED**.

### C. Influencing a Federal Official by Threat

Defendant argues that the government failed to introduce sufficient proof that he committed the acts alleged in Count 3 [Doc. 90, p. 8]. Specifically, he argues that mere perception of a potential threat is insufficient proof, and here the FBI Field Office never received a direct threat [*Id*.]. True threats, by contrast, require that the government show

9

by clearer proof that the alleged victims of defendant's planned attack actually feared violence against them [*Id*. at 9]. Defendant argues that he was instead engaging in constitutionally protected free speech [*Id*.].

The government responds by first noting that true threats fall outside the coverage of First Amendment protection for free speech [Doc. 91, p. 9]. Here, it argues that the defendant's creation of a kill list of individualized targets was a serious threat, as well as the actions he took with Carter or Roddy to strategize a plan to realize the murders [*Id*. at 10]. Further, the government argues that defendant clearly manifested his intent by saying "every hit has to hurt" [*Id*.].

To sustain a conviction under 18 U.S.C. § 115(a)(1)(B), the government must prove that: (i) the defendant threatened to assault and murder federal law enforcement officers; (ii) the individuals were federal law enforcement officers; and (iii) the defendant did so with the intent to impede, intimidate, or interfere with such law enforcement officers while the officer was engaged in the performance of official duties.

Here, the Court finds sufficient evidence to support the jury's verdict as to the influencing by threat charge in Count 3. Much of the evidence discussed *supra* Section III(A) remains relevant to this charge, as well. The government's introduction of encrypted messaging, recorded phone conversations, and direct testimony supports a finding that defendant threatened to assault and murder federal law enforcement officers. As for whether these communications constituted a "true" threat, the testimony of Jessi Mann and Richard Smith confirmed that some of the victims of defendant's plot actually feared for

10

their own safety. Indeed, this testimony included mention of an armed officer staying overnight at a colleague's home in the event that defendant's threat materialized. As for defendant's intent, the kill list included only those names of individuals who had been involved in investigating defendant's prior conduct on January 6, 2021. Smith also testified that he identified himself in a video recording taken from defendant's Ring doorbell camera, similarly connecting his performance of official duties with defendant's targeting of him, personally.

Based on this evidence, the Court finds that a reasonable jury could find that defendant threatened to assault and murder law enforcement officers who were engaged in the performance of their official duties. Thus, the Court finds that, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found all of the elements of the solicitation charged in Count 3 beyond a reasonable doubt. Moreover, even considering the weight and credibility of the evidence, the Court does not find that the verdict on Count 3 exceeds the bounds of reasonableness or results in a miscarriage of justice. Defendant's request for a judgment of acquittal, or, alternatively, a new trial on this ground is therefore **DENIED**.

IV. Conclusion

For the reasons discussed, the Court finds, after viewing the evidence in a light most favorable to the government, that a rational trier of fact could have found beyond a reasonable doubt that defendant committed the acts charged in Counts 1, 2, and 3. Additionally, the Court finds that granting defendant a new trial is not in the interest of

11

justice. Neither a judgment of acquittal nor a new trial is warranted, and defendant's motion [Doc. 90] is therefore **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE