UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No.: 3:22-CR-118-TAV-JEM-1 |
| EDWARD KELLEY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on defendant's Motion to Vacate Conviction and Dismiss Indictment with Prejudice [Doc. 93]. The government responded [Doc. 95], and defendant replied [Doc. 96]. The government filed a supplemental response of the type contemplated by E.D. Tenn. L.R. 7.1(d) [Doc. 97] and defendant did not reply within the time provided. *See* E.D. Tenn. L.R. 7.1(d). Accordingly, this matter is ripe for resolution. *See id*. 7.1(a), (d). For the reasons that follow, the Court will **DENY** defendant's motion [Doc. 93].

### I. Background

On December 16, 2022, a federal grand jury in the District of Columbia returned a multi-count indictment against defendant in the United States District Court for the District of Columbia (the "D.C. Case") [D.D.C. Case No. 1:22-CR-408, Doc. 28]. The D.C. Case charged defendant with offenses that were alleged to have occurred on or about January 6, 2021, in the District of Columbia [D.D.C. Case No. 1:22-CR-408, Doc. 52]. After a two-day bench trial in October 2024, United States District Judge Colleen Kollar-Kotelly

convicted defendant of all but one of the 12 counts alleged in the superseding indictment [D.D.C. Case No. 1:22-CR-408, Doc. 84].

On December 21, 2022, a federal grand jury in Tennessee returned a multi-count, multi-defendant indictment, charging defendant with conspiracy to murder employees of the United States, in violation of 18 U.S.C. § 1114 (Count 1), solicitation to commit a crime of violence, in violation of 18 U.S.C. §§ 1114 and 373 (Count 2), and influencing a federal official by threat, in violation of 18 U.S.C. § 115(a)(1)(B) (Count 3) (the "Tennessee Case") [Doc. 17]. This case charged defendant with offenses that occurred "at least from on or about December 3, 2022, to on or about December 15, 2022," and "on or about December 14, 2022" "within the Eastern District of Tennessee and elsewhere" [*Id*. ¶¶ 1, 3, 4]. Defendant proceeded to a jury trial on November 18, 2024 [Doc. 81]. After a three-day trial, a jury convicted defendant on all three counts [Doc. 85].

On January 20, 2025, President Donald J. Trump issued a proclamation entitled "Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at or Near the United States Capitol on January 6, 2021." 90 Fed. Reg. 8331 (Jan. 20, 2025). Citing his constitutional pardon power,[1] the President "grant[ed] a full, complete and unconditional pardon to all other individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021." *Id*. Additionally, the President directed the United States Attorney General to "administer and

---

[1] "[The President] shall have Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment." U.S. Const. art. II, § 2, cl. 1.

effectuate the immediate issuance of certificates of pardon to all individuals described in section (b) above" and "pursue dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." *Id*.

On January 21, 2025, the United States Attorney for the District of Columbia moved pursuant to Federal Rule of Criminal Procedure 48[2] to dismiss the indictment in defendant's D.C. Case, citing President Trump's pardon [D.D.C. Case No. 1:22-CR-408, Doc. 87]. The following day, Judge Kollar-Kotelly granted the government's motion and dismissed the D.C. Case [D.D.C. Case No. 1:22-CR-408, Doc. 88].

On January 27, 2025, defendant filed his instant motion, seeking to dismiss the indictment in this case and vacate his conviction on grounds of lack of jurisdiction, pursuant to Federal Rule of Criminal Procedure 12(b)(2) [Doc. 93]. Unlike the D.C. Case, the United States Attorney for the Eastern District of Tennessee has not moved for dismissal pursuant to Federal Rule of Criminal Procedure 48 and has instead responded in opposition to defendant's motion [*See* Docs. 95, 97].

**II. Legal Standard**

Federal Rule of Criminal Procedure 12(b)(2) provides that "[a] motion that the court lacks jurisdiction may be made at any time while the case is pending." The United States Court of Appeals for the Sixth Circuit has held that "[i]f an indictment does not charge a

---

[2] Rule 48 provides that "[t]he government may, with leave of court, dismiss an indictment, information, or complaint." Fed. R. Crim. P. 48(a).

3

cognizable federal offense, then a federal court lacks jurisdiction to try a defendant for violation of the offense." *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997) (holding that a motion brought under Fed. R. Crim. P. 12(b)(2) "may be raised at any time in the course of a proceeding" as jurisdiction implicates a court's ability to hear a case). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Howard*, 947 F.3d 936, 942 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

**III. Analysis**

Defendant argues that President Trump's pardon applies to the Tennessee Case and, therefore, this Court lacks jurisdiction [Doc. 94, pp. 5–8]. Specifically, he contends that the pardon's phrase "offenses related to events that occurred at or near the United States Capitol on January 6, 2021" must be construed to include the offenses underlying his instant conviction [*Id*. at 5]. In his view, the pardon's language is intended "to sweep broadly" [*Id*. at 8]. In support, defendant argues that Federal Bureau of Investigation ("FBI") Agent Jessi Mann led the investigation that ripened into both the Tennessee and D.C. Cases [*Id*. at 5–6]. Additionally, he argues that "[t]he only reason" he created a list containing the names of local federal law enforcement officials in Knoxville, Tennessee was due to "a mistake in the U.S. Attorney's Office in Washington, D.C." [*Id*. at 7].

4

The government responds by emphasizing that "[a]s both parties made explicitly clear to the Court and jury throughout litigation in this Court, this case is not about January 6, 2021" [Doc. 95, p. 2]. Specifically, it argues that the offense conduct alleged in the Tennessee Case relates to "entirely independent criminal conduct in Tennessee, in late 2022, more than 500 miles away from the Capitol" [*Id.*]. The government cites other recent decisions in the District of Columbia similarly finding that conduct physically and temporally removed from the Capitol on January 6, 2021, is unaffected by the President's pardon [*Id.* at 3 (citing *United States v. Taranto*, D.D.C. Case No. 1:23-CR-229)]. Finally, it argues that in the absence of a motion brought by the government pursuant to Rule 48[3]—which it has declined to bring "after consultation with officials in the Department of Justice"—defendant lacks a legal basis to support his request for dismissal [*Id.*].

In reply, defendant acknowledges his decision to "[make] clear to the Court and the Jury that this case was not about January 6, 2021," attributing this choice to the need to ensure a fair trial and avoid relitigating settled issues in the D.C. Case [Doc. 96, p. 2]. He also objects to the government's invocation of Rule 48 as misplaced where a presidential pardon applies, contending that this constitutional power prevails over prosecutorial discretion [*Id.* at 3]. Related to that discretion, defendant also requests that the Court require the government to state which specific officials at the United States Department of Justice "blessed this prosecution," implying that counsel for the government lacks the authority to speak on behalf of the Department [*Id.*]. Finally, he argues that the

---

[3] *See supra* note 2.

5

government's cited cases from the District of Columbia are inapposite; and he cites cases that he argues support a determination of relatedness for purposes of the pardon [*Id.* at 4 (citing *United States v. Miller*, D.D.C. Case No. 1:21-CR-119)].

In its supplemental brief, the government alerts the Court to the United States Attorney's Office for the District of Columbia's changed position in a case previously cited by the government [Doc. 97, p. 1 (citing *United States v. Wilson*, D.D.C. Case No. 1:23-CR-427-1)]. Specifically, the government notes that whereas the Department of Justice had previously opined that the President's pardon did not cover certain offense conduct at issue in *Wilson*, it now asserts that the pardon does cover this conduct [*Id.*]. However, the government reiterates that its position "has not changed" as to "defendant's independent volitional acts" at issue in the present Tennessee Case [*Id.*].

### A. Interpreting the Scope of the President's Pardon

The Court's analysis begins with the text. *See Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023). Courts tasked with interpreting the meaning of Executive materials have generally sought to effectuate their ordinary meaning. *See Ex Parte Grossman*, 267 U.S. 87, 115 (1925) (construing the plain meaning of a presidential pardon to determine its effect); *Wan v. Debolt*, No. 20-CV-3233, 2020 WL 6274992, at *3 (C.D. Ill. Oct. 26, 2020) (citing *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019)) ("The Court gives the language of the Executive Order its plain and ordinary meaning as the language is clear and unambiguous."); *United States v. Ehsan*, 163 F.3d 855, 858 (4th Cir. 1998) (applying the "ordinary meaning" of Executive Order terms in the absence of definitions);

6

*Montague v. United States*, 79 Ct. Cl. 624, 629 (Fed. Cl. 1934) (holding that Executive Orders "hav[e] the dignity and force of a statute [and] must be construed under the rules applicable to the construction of statutes").

Although the pardon does not define with precision the term "related," the Court interprets the text as a whole and finds that the pardon is primarily constrained by temporal and spatial parameters as defined by the date and location of "events." *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) ("The text must be construed as a whole."); *see also Facebook, Inc. v. Duguid*, 592 U.S. 395, 402 (2021) (citing Scalia & Garner as authoritative). The term "related" has been defined as "[c]onnected in some way; having relationship to or with something else." *Related*, *Black's Law Dictionary* (12th ed. 2024).[4] As noted in the *Oxford English Dictionary*, when coupled with "to" or "with," the term "related" functions grammatically as a predicative adjective, connecting its subject and object. *Related*, *Oxford English Dictionary Online*, https://doi.org/10.1093/OED/6785072134 (last visited Feb. 26, 2025). Under the grammar cannon, "[w]ords are to be given the meaning that proper grammar and usage would assign them." Scalia & Garner, *supra*, at 140. So, to discern the meaning of "related" in its predicative use, an interpreter must pay careful attention to the subject and object being related.[5]

---

[4] The cited definition does not appear to differ or conflict with defendant's chosen citation to *Merriam-Webster Dictionary* [*see* Doc. 94, p. 5].

[5] For this reason, defendant's analysis of "related to" on its own, without parsing the subject and object being connected, does not address fully the interpretive question presented.

7

Here, the pardon's subject "offenses" must be connected to "events that occurred at or near the United States Capitol on January 6, 2021." 90 Fed. Reg. 8331. The meaning of the pardon's term "related to," therefore, is shaped by the meaning of the phrase that follows, the defining attributes of which are place and time. *See* Scalia & Garner, *supra*, at 167 ("Context is a primary determinant of meaning."). By applying the whole-text canon and parsing the meaning of this "events" clause, the Court arrives at its interpretation of the pardon as a whole. Put somewhat differently, by defining *what* type of "events" are being related the text also suggests *how* these "events" must be related to "offenses."

First, the pardon situates "events" within the physical vicinity of "the United States Capitol" in Washington, D.C. The pardon's first locational term, "*at* . . . the United States Capitol" straightforwardly refers to the Capitol grounds and building. 90 Fed. Reg. 8331 (emphasis added). The second term, "*or near* the United States Capitol," is undefined, but its contextual meaning is shaped directly by the term "at." *Id*. (emphasis added); Scalia & Garner, *supra*, at 195 ("Associated words bear on one another's meaning (*noscitur a sociis*)."). And the ordinary meaning of the term "near," defined as "close at hand" and "not distant," could not be understood to encompass, for example, all events occurring within the District of Columbia. *Near*, *Oxford English Dictionary Online*, https://doi.org/10.1093/OED/8756758026 (last visited Feb. 26, 2025). Nor could "near" be read to include events occurring in an entirely different state.

Second, the pardon limits its scope to events occurring "on January 6, 2021." This phrase is considerably more precise. It refers to a single date—not a month, period of

8

months, or larger timeframe. The ordinary meaning of this date could not be understood to encompass any other, unenumerated dates, and certainly not a date occurring in a different month of a subsequent year. This time provision appears immediately after the physical location provision without the term "or," or delineating punctuation; therefore, the "events" contemplated by the pardon must satisfy *both* conditions of place and time.[6]

To summarize, although the pardon does not define "related," application of interpretive canons reveals that relatedness by time and place should be given primary weight. Moreover, the President's selection of these two criteria from among other potential forms of relation implies, to some extent, the subjugation or exclusion of other forms of relation.[7] *See* Scalia & Garner, *supra*, at 107 ("The expression of one thing implies the exclusion of others (*expressio unius est exclusion alterius*)."). However, while connections by time and place should be given primary weight based on the text's ordinary meaning, the term "related to" is broad enough to encompass causal or substantive connections, as defendant argues. In determining whether defendant's Tennessee Case falls within the pardon's scope, the Court will therefore first evaluate relations of time and place, and then evaluate other potential relations.

---

[6] The series-qualifier canon dictates this result as "[i]n the absence of some other indication, the modifier reaches the entire enumeration." Scalia & Garner, *supra*, at 147. Here, the modifier is the predicative adjective "related to" and it reaches the entire phrase "events that occurred at or near the United States Capitol on January 6, 2021."

[7] The pardon does not, for example, specify "related" investigative resources between "offenses" and "events." Therefore, defendant's argument that "[b]oth cases were led by Agent Mann" should be accorded secondary weight, and not primary [*see* Doc. 94, p. 5]. This canon also disfavors defendant's overly broad interpretation that the pardon simply "capture[s] all conduct that related to January 6, 2021" [Doc. 96, p. 2].

## B. Whether the Pardon Extends to Defendant's Tennessee Case

### 1. Primary Considerations of Time and Place

After careful consideration of the parties' arguments, the Court finds that the offenses at issue in defendant's Tennessee Case are temporally and spatially unrelated to "events that occurred at or near the United States Capitol on January 6, 2021." Whether referring to the indictment, the parties' filings, or the course of trial, this case was separated from the defendant's conduct in the D.C. Case by years and miles.

First turning to the indictment, the Tennessee grand jury did not charge defendant with *any* conduct occurring physically or temporally close to "events that occurred at or near the United States Capitol on January 6, 2021." Count One, which charges him with conspiracy to murder employees of the United States, recounts specific communications between defendant and Austin Carter on December 3, 13, and 14, 2022 [Doc. 17 ¶ 2].[8] The indictment alleges, and evidence introduced at trial supports, that these communications occurred within the Eastern District of Tennessee [*See id*. ¶ 1]. And the conduct alleged in Count One involved planning and preparing to kill FBI employees stationed at the FBI Field Office in Knoxville, Tennessee [*see id*. ¶ 2]. In sum, none of the allegations contained in Count One occurred near Washington, D.C., nor did they occur anytime surrounding January 6, 2021.

---

[8] For a more fulsome discussion of trial evidence, the Court directs the reader to its Memorandum Opinion and Order [Doc. 101] ruling on defendant's motion for a new trial, filed contemporaneously with this Memorandum Opinion and Order.

Counts Two and Three follow suit. The solicitation count alleges that defendant sought to persuade others to engage in a crime of violence between December 3 and 15, 2022, again within the Eastern District of Tennessee [*Id*. ¶ 3]. The influencing federal official by threat count alleges that on or about December 14, 2022, defendant threatened to assault and murder federal officials within the Eastern District of Tennessee [*Id*. ¶ 4]. None of the alleged conduct, therefore, is physically or temporally "related to" events that occurred in Washington, D.C. nearly two years prior.

Second, the parties' pre-trial filings in this case manifested their view that defendant's D.C. and Tennessee Cases were distinct and separate, as well as their intent to largely exclude any mention of the D.C. Case at trial. For example, in a sealed filing, defendant stated that he "does not need to explore" "matters in [defendant's] Washington D.C. case which has already proceeded to trial and verdict," and "his counsel does not intend to do so" [Sealed Doc. 73, p. 2]. He acknowledges as much in his instant briefing [*See* Doc. 96, p. 2]. For its part, the government "recognize[d] that the defendant is not on trial before this Court for his alleged conduct at the United States Capitol on January 6, 2021," and "d[id] not intend to elicit proof in its case-in-chief concerning the specific charges he faces in the DC Case or any specifics of his alleged conduct while at the Capitol on January 6, 2021" [Doc. 63, pp. 7–8]. The government additionally noted that it did not intend to question prospective jurors during *voir dire* regarding January 6 beyond ensuring they "can fairly evaluate the evidence presented in this case on its own merits" [*Id*. at 8].

11

Third, the evidence introduced at trial did not include any direct references to defendant's conduct at the Capitol on January 6, 2021 [*See* Docs. 83, 87]. Timestamped recordings and communications from May, September, and December of 2022 were introduced, over one year after January 6, 2021 [Doc. 87]. And the government did not elicit testimony from its witnesses regarding the defendant's whereabouts on January 6, 2021, or the specific nature of the charges alleged in his D.C. Case [Doc. 83].

Considering the facts of this case and the parties' arguments, defendant's conduct is not related to "events that occurred at or near the United States Capitol on January 6, 2021" by either of the primary means contemplated by the pardon. The Court will now address secondary forms of relation that do not appear in the pardon's text, but that nevertheless merit consideration.

### 2. Secondary Considerations of Substance and Causation

Beginning with a comparison of defendant's substantive offenses, there is no overlap whatsoever between the indictments in the D.C. and Tennessee Cases with respect to charging statutes or substantive conduct alleged [*Compare* D.D.C. Case No. 1:22-CR-408, Doc. 52, *with* Doc. 17]. The Superseding Indictment in defendant's D.C. Case alleges that defendant committed civil disorder, in violation of 18 U.S.C. § 231(a)(3); obstruction of an official proceeding, and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c) and 2; assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1); destruction of government property, in violation of 18 U.S.C. § 1361; entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1);

12

disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); engaging in physical violence in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(4); entering and remaining in the Gallery of Congress, in violation of 40 U.S.C. § 5104(e)(2)(B); disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D); act of physical violence in the Capitol grounds or buildings, in violation of 40 U.S.C. § 5104(e)(2)(F); and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) [D.D.C. Case No. 1:22-CR-408, Doc. 52].  The Indictment in defendant's Tennessee Case, by contrast, alleges conspiracy to murder employees of the United States, in violation of 18 U.S.C. § 1114; solicitation to commit a crime of violence, in violation of 18 U.S.C. §§ 1114 and 373; and influencing a federal official by threat, in violation of 18 U.S.C. § 115(a)(1)(B) [Doc. 17].  None of the substantive offenses or charging provisions overlap.

Moreover, counsel for both parties did not attempt to relate these unrelated substantive offenses at trial.  Indeed, to the Court's recollection, the jury was unaware of the specific conduct underlying defendant's D.C. Case throughout this trial.  As for the existence of defendant's D.C. indictment, the Court recalls only sparse references during *voir dire* and trial for the limited purpose of screening potential bias among jurors and contextualizing defendant's targeting of certain federal officials.  Defendant's instant position, therefore, that "[t]he cases are clearly related to one another" because "[b]ut for the Washington D.C. indictment, this case would never have been investigated, charged and prosecuted" is unsupported by the trial record [Doc. 94, p. 7].  If, as defendant now

13

Case 3:22-cr-00118-TAV-JEM    Document 102    Filed 03/10/25    Page 13 of 20
PageID #: 919

claims, defendant's D.C. Case is an indispensable feature of the substantive claims at issue in his Tennessee Case, his decision to omit evidence or elicit testimony regarding this connection at trial belies such a conclusion. The Court is mindful of the risk of undue prejudice that defendant sought to mitigate by excluding references to the D.C. Case at trial, but such considerations would have presumably yielded to the demands placed upon the parties by their respective burdens of proof if the D.C. Case was substantively essential to a claim or defense in the Tennessee case.

Finally, the Court finds that defendant's Tennessee Case lacks a sufficient causal[9] connection to "events that occurred at or near the United States Capitol on January 6, 2021" for purposes of the pardon. 90 Fed. Reg. 8331. Trial evidence established that defendant took independent, volitional action to prepare for a violent attack against federal officials in Knoxville—actions that are causally attenuated from the events of January 6, 2021. His acquisition of firearms, ammunition, and explosive materials, coordination with Austin Carter and Christopher Roddy to train for combat, and his distribution of a list of targeted victims are all intervening actions taken without direct or proximate relation to January 6, 2021, though perhaps in relation to the investigation of conduct occurring on January 6,

---

[9] In view of the pardon's silence as to causation and the absence of binding authority interpreting the pardon, the Court borrows here the general principles of causation and the attenuation thereof from federal criminal case law. *See, e.g., Paroline v. United States*, 572 U.S. 434, 446 (2014) (first citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 265–68 (1992); and then *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 529–36 (1983)) ("Given proximate cause's traditional role in causation analysis, this Court has more than once found a proximate-cause requirement built into a statute that did not expressly impose one."); *Utah v. Strieff*, 579 U.S. 232, 242 (2016) (discussing the causal chain between a police stop and the discovery of evidence).

2021—a form of relation that is, as mentioned before, notably absent from the text of the pardon. Defendant's continued assertion that the "only" reason he created his list was the failure of Washington, D.C. prosecutors to redact certain names ascribes undue significance to one attenuated link in the causal chain that, according to trial evidence, led to the conduct at issue in the Tennessee Case [*see* Doc. 96, p. 2]. And even if the Court were to assume without deciding that defendant describes a causal connection between the non-redaction of names in D.C. and his creation of a list, this connection does not extend to defendant's other independent actions in the Tennessee Case. On balance, considering this attenuated relation in the absence of any persuasive showing of temporal, spatial, or substantive relatedness further confirms that the conduct underlying the Tennessee Case lacks a sufficient causal connection to "events that occurred at or near the United States Capitol on January 6, 2021" for purposes of the pardon.

The Court concludes that defendant has failed to demonstrate secondary relatedness as contemplated by the pardon. Even if the Court were to agree with defendant as to an attenuated causal relation, this showing would still fall short in the absence of any primary connection in time and place, or a secondary showing of substantive relation.

### C. Consideration of the Government's Position and Non-binding Precedent

The Court has determined that the pardon does not encompass defendant's Tennessee Case based on its interpretation of the pardon's text and without need to consider the government's lack of a Rule 48 motion. Defendant's procedural arguments about Rule

15

48 and the Department of Justice,[10] however, do not disturb the Court's independent determination [*See* Doc. 96, pp. 2–4]. The Court agrees with defendant that the constitutional pardon power, where it applies, presumably supersedes the discretionary authority reflected in Federal Rule of Criminal Procedure 48 [*See id*. at 2–3]. But having determined that the instant pardon does not apply to defendant's Tennessee Case, no apparent conflict exists. Moreover, given that the President's pardon expressly directs the Attorney General to "administer and effectuate the immediate issuance of certificates of pardon to all individuals described in section (b) above" and "pursue dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021," the determination by the Attorney General that defendant's Tennessee Case is ineligible for the pardon is persuasive, albeit not dispositive. 90 Fed. Reg. 8331. In other words, because the pardon is not entirely self-executing and instead enlists the implementing and interpretive capacities of the Department of Justice, the Department's position appears relevant, at minimum.

Although neither party cites binding authority from this Circuit as to the application of this pardon, a survey of the somewhat inconsistent landscape only reiterates the importance of the Court's foregoing textual analysis (*See supra* Section III(A)). As an

---

[10] Defendant's request that the Court "require the U.S. Attorney to cite specifically who has blessed this prosecution" is unnecessary and unworkable. As a general matter, "prosecutors [are] employees of the Department of Justice and [are] authorized to prosecute the case on behalf of the United States." *United States v. Stierhoff*, No. 6-CR-42, 2011 WL 6003888, at *15 (D.R.I. Nov. 30, 2011).

16

initial observation, in all but one of the cases cited by the parties, the government moved for dismissal pursuant to Rule 48, unlike the instant case. *See United States v. Taranto*, D.D.C. Case No. 1:23-CR-229, Doc. 96; *United States v. Miller*, D.D.C. Case No. 1:21-CR-119, Doc. 150; *United States v. Pollock et al.*, D.D.C. Case No. 1:21-CR-447, Doc. 412; *United States v. Vo*, D.D.C. Case No. 1:25-CR-10, Doc. 8; *but see United States v. Wilson*, D.D.C. Case No. 1:23-CR-427-1. In one such Rule 48 motion, albeit limited to certain counts, the government appears to agree with this Court's interpretation, stating that "[t]he language of the pardon is limited in scope by time and location." *Taranto*, D.D.C. Case No. 1:23-CR-229, Doc. 101, p. 3; Doc. 96 (moving to vacate jury verdict as to January 6, 2021, counts but not June 2023 counts involving firearms and ammunition). In *Taranto*, the government emphasized that "[defendant's] possession of guns, large-capacity magazines, and hundreds of rounds of ammunition, alarming statements about a 'detonator' in his car, and purportedly driving to a federal facility, all occurring in June 2023, and not at the United States Capitol, are wholly unrelated to the pardon for and dismissal of charges related to January 6, 2021 at the United States Capitol." *Id.*, Doc. 101, p. 4. The court ultimately agreed with the government and declined to stretch the pardon to conduct separated by time and place. *Id.*, Minute Order, Feb. 12, 2025.

However, the government appears to advance differing positions as to the pardon's coverage in a different case. *See Wilson*, D.D.C. Case No. 1:23-CR-427-1. In *Wilson*, the defendant pled guilty to one charge arising from January 6, 2021, at the Capitol, and two firearms charges arising occurring in the Western District of Kentucky in June 2022.

17

*Wilson*, D.D.C. Case No. 1:23-CR-427-1, Doc. 56 (consolidating Kentucky charges with D.C. charges pursuant to Fed. R. Crim. P. 20(a)). Upon receipt of the defendant's pardon-related filing, the court ordered the government to explain why it should not treat "the firearms offenses [as] unrelated to the defendant's criminal conduct on January 6, 2021." *Id*., Minute Order, Feb. 3, 2025. Initially, the government argued that the Kentucky offenses "did not occur at the United States Capitol on January 6, 2021, and thus, by the plain language of the certificate, the pardon does not extend to these convictions." *Id*., Doc. 103, p. 2. Then, after the court entered an order agreeing with the government's interpretation, the government reversed itself and argued that "a reasonable interpretation" of the pardon "include[s] cases such as the defendant's, where the firearms that formed the basis of his convictions were found as a result of a search warrant for evidence of the defendant's conduct on January 6, 2021 (and for which he was not previously being investigated)." *Id*., Doc. 111, p. 3. While the *Wilson* court has yet to rule on the matter, this change in position underscores the importance of applying interpretive canons to the pardon itself. In any event, the nonbinding *Wilson* case is distinguishable from the case at bar on several grounds, including the substantive nature of the non-D.C. charges, the existence of a trial record, and the government's position.

Several of the cited cases are distinguishable on additional grounds and do not conflict with the Court's interpretive framework. For example, in *United States v. Miller*, the District of Columbia court dismissed all counts; but every count alleged in the Second Superseding Indictment occurred "on or about January 6, 2021, within the District of

18

Columbia" [D.D.C. Case No. 1:21-CR-119, Docs. 61, 150]. Similarly, while it is true that the court in *United States v. Pollock et al.* dismissed two failure to appear counts occurring on March 6, 2023, and August 7, 2023, respectively, the government added these counts to a pre-existing, twenty-four count indictment that alleged exclusively conduct occurring "on or about January 6, 2021, within the District of Columbia" after two defendants failed to appear in connection with those allegations [D.D.C. Case No. 1:21-CR-447, Docs. 8, 116, 412]. In another example, *United States v. Vo*, the government moved pursuant to Rule 48 to dismiss a failure to appear count that had been alleged in January 2025 as a direct result of defendant's failure to self-surrender to the Bureau of Prisons following a jury's finding that he was guilty of certain offenses at the Capitol on January 6, 2021 [D.D.C. Case No. 1:25-CR-10, Docs. 1, 8]. The district court granted this motion in part, deeming the dismissal as without prejudice [D.D.C. Case No. 1:25-CR-10, Doc. 2]. None of these cases involved the strained causal connection of the sort at issue in this case as discussed above.

In conclusion, applying the ordinary meaning of President Trump's pardon, *see Ex Parte Grossman*, 267 U.S. at 115, the Court finds that it does not encompass defendant's Tennessee Case because this case involved separate offense conduct that was physically, temporally, and otherwise unrelated to defendant's conduct in the D.C. Case and/or events at the Capitol on January 6, 2021. As the government notes, this case involves "defendant's entirely independent criminal conduct in Tennessee, in late 2022, more than 500 miles away from the Capitol: threatening, soliciting, and conspiring to murder agents, officers, and employees of the FBI, Tennessee Bureau of Investigation, Tennessee Highway Patrol,

19

Case 3:22-cr-00118-TAV-JEM   Document 102   Filed 03/10/25   Page 19 of 20
PageID #: 925

Maryville Police Department, Blount County Sheriff's Office, and Clinton Police Department" [Doc. 95, p. 2].

Because the pardon does not apply to defendant's convictions for conspiracy to murder employees of the United States (Count 1), solicitation to commit a crime of violence (Count 2), and influencing a federal official by threat (Count 3), the Court overrules defendant's jurisdictional challenge under Fed. R. Crim. P. 12(b).

## IV. Conclusion

For the reasons discussed above, defendant's Motion to Vacate Conviction and Dismiss Indictment with Prejudice [Doc. 93] is therefore **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE