IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| *Plaintiff,* | ) | |
| v. | ) | Case No.: 3:22-CR-118-TAV |
| EDWARD KELLEY, | ) | |
| *Defendant.* | ) | |

RESPONSE BY VICTIM WILLIAM TAYLOR
IN SUPPORT OF MOTION FOR RELEIF

1. Neither the United States nor Defendant objects to, or raise any arguments against the granting of, William Taylor's Motion to Intervene as a crime victim under 18 U.S.C. § 3771 in this case.

2. Neither the United States nor Defendant denies William Taylor is entitled to the full protections granted to federal crime victims in 18 U.S.C. § 3771 ("CVRA").

3. Neither the United States nor Defendant denies that this Court issued oral Orders sealing Letters A and B on August 12, 2024, and February 28, 2025, respectively, or that those Orders remain in effect.

### Response To United States Arguments

Letter A

4. The United States admits an unredacted written copy of Letter A was disclosed to Defendant "to ensure the United States satisfied its obligations to provide discovery" and to the FBI "to facilitate investigation of the allegations it

contained." The United States further admits it was aware of the sealing order for Letter A but asserts it had received this Court's permission "to share the letter with the FBI for review and investigation."

5. The facts and circumstances, however, demonstrate the FBI improperly used and disclosed Letter A in violation of Taylor's CVRA rights and appears to have exceeded any reasonable interpretation about the scope of this Court's permitted exception to its Letter A sealing order. Regardless of the scope of the Court's exception, the FBI cannot deny it was aware of (or at least should have been aware of) its obligations under the CVRA to treat crime victims with dignity and respect and to protect their privacy and safety. Moreover, it cannot be the case under any proper interpretation of the CVRA that this Court's Letter A sealing order expressly or even impliedly gave the FBI permission to violate Taylor's CVRA rights.

6. The FBI's actual use of Letter A went well beyond fulfilling its ethical duties to provide discovery to Defendant and sharing Letter A with the FBI for internal review and investigation. Instead, the FBI's internal use of Letter A was done with the intent to harm, and with the effect of harming, William Taylor.

    a. Based on Taylor's twenty years of experience working for the FBI as an agent and supervisor, among other duties, a full unredacted copy of Letter A would have been provided at a minimum to SAC Joe Carrico, ASAC Joel Feaster, ASAC Scott Davis, and Chief Division Counsel (CDC) Todd Celeste, all from the FBI's Eastern District of Tennessee field office

("EDTN FO"). Though Letter A's distribution should have ended there, it did not.

b. CDC Celeste met in person with at least one squad of the EDTN FO to discuss Letter A. During this meeting, CDC Celeste informed the squad that a former employee had written a letter to the Court in the *Kelley* prosecution and caused the delay in the trial. CDC Celeste further told the squad nobody should discuss the case with the former employee, and nobody should retaliate against the former employee who wrote it. The false impression of at least one attendee at the meeting was that the author of Letter A was trying to derail the *Kelley* prosecution.[1]

c. There was, however, no legitimate reason for the FBI to have informed the FBI squad that a "former employee" wrote Letter A causing the trial delay. Local media had already reported that the Court had received a letter and the trial had been delayed. Similarly, there was no legitimate reason to admonish employees not to talk to or retaliate against an unnamed author of Letter A. FBI employees had no need to know anything about Letter A beyond what the media reported.

d. Multiple sources have confirmed FBI employees present at the squad meeting with CDC Celeste, and even some not present at the meeting, were already aware of or later became aware of Letter A and believed it was written by William Taylor. Why did so many FBI employees in the EDTN FO believe it was written by William Taylor? The answer is because

---

[1] As Letter A makes clear on multiple occasions, William Taylor did not seek to benefit or hurt either party with his disclosures to the Court.

one or more of the persons listed in paragraph 6(a) above had already told some FBI employees that Taylor wrote it, and they had in turn spread the information to other FBI employees. There were likely dozens of FBI employees in the EDTN FO who knew about Letter A, who knew Taylor was the author, and who believed Taylor was trying to sabotage the prosecution of the Defendant. Based on Taylor's twenty years of experience working for the FBI, this "internal leak" of private information – in this case information about a federal crime victim both protected by the CVRA and sealed by the Court – was not simply an isolated accident or mistake. Rather, it was deliberate and standard operating procedure for how the FBI often ensured FBI misconduct was never reported, corrected, or punished.

   e. Thus the real purposes and effects of CDC Celeste's unnecessary Letter A statements to the squad were to shun William Taylor from the "FBI family," impugn his reputation and motives for writing Letter A, and, perhaps most importantly, to intimidate other FBI employees from reporting any FBI misconduct to anyone outside the office, whether up the FBI chain, to the FBI's Inspector General, or to the Court. This constituted retaliation against William Taylor and his wife (who also was a crime victim in this case as one of the FBI employees on Defendant's hit list).

7. The FBI's violations of the CVRA (and the sealing order) have already resulted in retaliation by FBI employees. During the Defendant's trial, which began on November 18, 2024, Taylor and his wife were in attendance even though both

had recently retired from the FBI. Taylor's wife was assigned to the same squad that worked on the *Kelley* investigation, and both had excellent working relationships and friendships with members of the squad and other employees of the FBI's EDTN FO. Numerous FBI employees also attended the trial. It was immediately evident on the first day of the trial that Taylor and his wife were both being shunned by former colleagues. Many did not make eye contact and even during breaks, they were avoided by nearly everyone despite being part of the "FBI family" for years. The Taylors would not have been treated this way by their friends and colleagues unless they knew William Taylor submitted Letter A to the Court, believed they should not talk to Taylor and his wife, and had reason to believe the FBI would retaliate against them if they did.

8. Even though dozens of personnel in the FBI's EDTN FO were informed about Letter A, the United States nevertheless asserts, without any factual support, that it did not violate the Court's Letter A sealing order. The meeting led by the CDC alone is proof enough of the violation: its purpose was not to investigate the matter but rather to retaliate against Taylor and his wife and to damage Taylor's reputation and he and his wife's friendships with other FBI employees. Even if the FBI's improper use of Letter A is deemed not to be a "technical violation" of this Court's sealing order, its use most certainly was a violation of the CVRA rights of Taylor and his wife.

9. Moreover, the FBI and USAO never conducted a genuine internal investigation of the allegations in Letter A or Letter B. If they had done so, they would have discovered Taylor's allegations about FBI misconduct – including the FBI's

calling for revenge on the Defendant and subsequent perjury by an FBI employee at Defendant's trial – were true and they would have taken appropriate measures to protect the federal crime victim who disclosed it, to punish those responsible for the misconduct, and to report it and make sure it never happens again. Instead, the United States seeks to cover up what the FBI wrongly did with Letter A by arguing against this Court ordering the FBI to at least tell the Taylors who received an unredacted written copy of Letter A and who was told of its contents.

Letter B

10. The United States admits (or at least does not dispute) that it provided an unredacted written copy of Letter B to Defendant's counsel on February 13, 2025. The United States further admits (or at least does not dispute) that Letter B contained personal identifying information of federal crime victim William Taylor, including his name, home address, and home telephone number. The United States also admits that it knew Letter B was related to Letter A, Letter A was subject to this Court's sealing order, Letter B included Letter A as an attachment, and Letter B was written by a federal crime victim and submitted only to the U.S. Attorney's Office for the Eastern District of Tennessee.

11. Despite the United States' knowledge about Letters A and B and that both were written by a federal crime victim, the United States' nevertheless sent an unredacted written copy of Letter B to Defendant's counsel two weeks prior to filing Letter B with this Court as a sealed exhibit.

12. The United States, without any genuine deliberation and without considering or attempting to protect William Taylor's rights as a federal crime victim, sent an unredacted written copy of Letter B to Defendant and Defendant's counsel without any restrictions on its use by Defendant and Defendant's counsel. Moreover, the United States knew William Taylor's life had already been threatened by Defendant himself, but still made no attempt to protect Taylor's safety and personal identifying information in Letter B, despite the protections of the CVRA.

### Response To Defendant's Arguments

13. The Defendant admits (or at least does not dispute) that Defendant's counsel provided unredacted copies of Letter A and Letter B (including attachments) to him. The Defendant also does not dispute that he passed along written copies of Letter A and Letter B to Jake Lang, a J6 blogger, and to Brittany Bailey, a television news reporter.

14. Defendant asserts, however, that he did not violate this Court's sealing orders because "[t]here is no protective order in place" and Defendant has "an absolute First Amendment right to speak [and, by implication, to provide a written copy of Letters A and B] with whomever he chooses."

15. Notwithstanding Defendant's arguments to the contrary, Defendant is indeed subject to the Court's sealing orders by virtue of being a party in this case, whether an additional protective order is in place or not. Moreover, Defendant never received any exception to this Court's sealing orders permitting him to provide unredacted written copies of Letters A and B to any Internet bloggers

(including Jake Lang) or television reporters (including Brittany Bailey). Further, the First Amendment does not grant any right or privilege to Defendant to violate valid sealing orders imposed by this Court during the case.

16. For these reasons and those set forth in Taylor's Motion to Intervene, Motion for Relief, and Brief in Support of Motion for Relief, Taylor requests this Court grant the relief requested against Defendant and Defendant's Counsel.

17. To the extent there are any necessary material facts in dispute, William Taylor requests the ability to subpoena witnesses and a hearing to present evidence to allow the Court to make any such necessary factual findings. To the extent the relevant facts are already sufficiently established, William Taylor requests the Court grant the relief requested in his Motion for Relief.

Respectfully submitted,

/s/   Matt Dummermuth
Matt M. Dummermuth
    (admitted *Pro Hac Vice*)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: matt@binnall.com

*Counsel for William Taylor*

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2025, a true and correct copy of the foregoing was served by electronic mail on:

**Mark E Brown**
Menefee & Brown, P.C.
2633 Kingston Pike, Suite 100
Knoxville, TN 37919
865-357-9800
Fax: 865-357-9810
Email: mbrown@menefeebrown.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Casey Thomas Arrowood**
U S Department of Justice (Knox USAO)
Office of U.S. Attorney
800 Market Street, Suite 211
Knoxville, TN 37902
(865) 225-1720
Email: casey.arrowood2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: United States Attorney*

**Kyle J Wilson**
U S Department of Justice (Chattanooga USAO)
Office of U.S. Attorney
1110 Market Street, Suite 515
Chattanooga, TN 37402
423-752-5140
Email: kyle.wilson@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: United States Attorney*

/s/ Matt Dummermuth
Matt M. Dummermuth